**OLSHAN FOUNDATION REPAIR COMPANY, Appellant,**

v.

**Remigio E. AYALA and Martha Ayala, Appellee.**

No. 04–04–00829–CV.

Court of Appeals of Texas, San Antonio.

Sept. 7, 2005.

Darrell Frank Smith, Ruth G. Malinas, Samuel V. Houston III, Ball & Weed, P.C., San Antonio, for appellant.

Daniel O. Kustoff, Lang & Kustoff, San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

Olshan Foundation Repair Company ("Olshan") appeals the trial court's order denying its motion to compel arbitration. In one issue, Olshan contends that the trial court abused its discretion in denying Olshan's application for arbitration on the grounds that it was unconscionable. We overrule this issue and affirm the decision of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

Remigio and Martha Ayala contracted with Olshan for the installation of foundation stabilization to their home. Alleging that the foundation system installed by Olshan failed, the Ayalas filed suit against Olshan, asserting claims for breach of contract, violations of the Deceptive Trade Practices Act, fraud, and negligence. In response, Olshan moved to stay the proceedings and compel arbitration pursuant to an arbitration agreement with the Ayalas. On February 13, 2003, the trial court granted Olshan's motion and ordered the parties to arbitrate.

In accordance with the terms of their agreement, Olshan and the Ayalas initiated the arbitration process with the American Arbitration Association ("AAA"). In September 2004, the Ayalas received notice that the arbitration of the case would cost the parties approximately $63,670.00, the Ayalas' portion of that amount totaling over $33,000.00. Thereafter, the Ayalas reurged their objections to arbitration. The Ayalas contended that their inability to pay the cost of the arbitration effectively barred them from asserting their claims, thus rendering the arbitration clause substantively unconscionable. The trial court granted the Ayalas' motion and, following an evidentiary hearing, denied Olshan's motion to compel arbitration based upon its finding that the cost of arbitration rendered the agreement unconscionable. Olshan appeals the decision of the trial court.

### DISCUSSION

In one issue, Olshan contends the trial court abused its discretion in denying Olshan's application for arbitration. Specifically, Olshan argues that because the arbitration agreement treated both parties to the agreement equally, it was error for the trial court to find the agreement unconscionable. We disagree.

### A. Standard of Review

■ We review the trial court's decision concerning the unconscionability of an arbitration agreement for an abuse of discretion. *Pony Express Courier Corp. v. Morris*, 921 S.W.2d 817, 820 (Tex.App.-San Antonio 1996, no writ) (holding that unconscionability involves both questions of law and fact). In applying this standard, we defer to the trial court's factual determinations while reviewing its legal conclusions *de novo. Id.* Where, as here, the facts are undisputed, a trial court abuses its discretion by incorrectly analyzing the law or by misapplying the law to the . undisputed facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992).

### B. Unconscionability of the Arbitration Agreement

■ "Arbitration agreements are interpreted under general contract principles." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003). Accordingly, an agreement to arbitrate is valid absent grounds for the revocation of a contract, such as unconscionability. TEX. CIV. PRAC. & REM.CODE ANN. § 171.001 (Vernon 2005); *Morris*, 921 S.W.2d at 821. As a general rule, the term "unconscionability" describes a contract that is unfair because of

its overall one-sidedness or the gross one-sidedness of one of its terms. *Morris*, 921 S.W.2d at 821. Nevertheless, "unconscionability" has no precise legal definition because it is not a concept but a determination to be made in light of a variety of factors. *Id.*

■■■■ Here, the Ayalas argued that the cost of the proposed arbitration was so prohibitive as to render the arbitration agreement substantively unconscionable.[1] On this issue, both the United States and Texas Supreme Courts have recognized the possibility that the excessive costs of an arbitration might, under certain circumstances, render an arbitration agreement unconscionable. *See Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000);[2] *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 757 (Tex.2001).[3] Specifically, in *FirstMerit Bank*, the Texas Supreme Court noted that "the existence of large arbitration costs could preclude a litigant from vindicating her . . . rights [in the arbitral forum]." *FirstMerit Bank*, 52 S.W.3d at 757 (quoting *Green Tree Fin. Corp.*, 531 U.S. at 91, 121 S.Ct. 513). Given the strong policy favoring arbitration agreements, however, the party opposing the arbitration must prove the likelihood of incurring such costs. *Id.* While neither court specified "how detailed the showing of prohibitive expenses must be," the Texas Supreme Court did hold that "there is no doubt that *some* specific information of future costs is required." *Id.* (quoting *Green Tree Fin. Corp.*, 531 U.S. at 91, 121 S.Ct. 513 (holding that the mere·possibility or "risk" that a plaintiff might bear such costs was too speculative)).

■■■■ Here, unlike the parties seeking to avoid arbitration in *Green Tree* and *FirstMerit*, the Ayalas supported their motion to the trial court with specific information regarding the fees they would be required

---

1. Unconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision; and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself. *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002). In evaluating the validity of an arbitration provision, courts may consider both procedural and substantive unconscionability of an arbitration clause. *Id.* at 571–72.

2. In *Green Tree*, the party resisting arbitration (Randolph) asserted that "[a]rbitration costs are high" and that she did not have the resources to arbitrate. *Green Tree Fin. Corp.*, 531 U.S. at 91 n. 6, 121 S.Ct. 513. However, the United States Supreme Court noted that Randolph failed to support her claim. *Id.* Instead, Randolph cited what she claimed were AAA figures on arbitration costs, but she provided no evidence that AAA would actually conduct the arbitration or charge her the fees she identified. *Id.* Because of this uncertainty, the Court deemed the evidence insufficient to defeat arbitration. *Id.* ("Randolph plainly failed to make any factual showing that the American Arbitration Association would conduct the arbitration, or that, if it did, she would be charged the filing fee or arbitrator's fee that she identified").

3. Likewise, in *FirstMerit Bank*, the parties resisting arbitration (Pete and Janie de los Santos) contended that the arbitration clause was unconscionable because the arbitration *might* subject them to substantial costs and fees. *FirstMerit Bank*, 52 S.W.3d at 755. In support, the de los Santoses testified, in two sworn affidavits, that AAA charged a "minimum $2,000 filing fee and a $250/day/party hearing fee, along with several other unspecified fees, for hearings before a three-member panel." *Id.* at 756. Nonetheless, the Texas Supreme Court refused to determine whether these costs were excessive because, as in *Green Tree*, the de los Santoses presented "no evidence that AAA would actually conduct the arbitration or charge the specified fees." *Id.* The arbitration clause did not require AAA to conduct the arbitration, and it made no mention of costs. *Id.* Therefore, the Court held that there was legally insufficient evidence that the plaintiffs would be denied access to arbitration based on excessive costs. *Id.*

to pay for the arbitration. The Ayalas produced evidence establishing that (1) the AAA will preside over the arbitration; (2) a panel of three structural engineers approved by the AAA will conduct the arbitration; and (3) the arbitration will cost the parties over $63,670.00. The Ayalas further presented the court with a copy of an invoice from the AAA showing that they owed $33,150.00, "payment due upon receipt," for their part of the arbitration expenses.[4] At the hearing, the evidence concerning the Ayalas' costs and expense was uncontroverted by Olshan.

In addition, the Ayalas asserted that these costs would serve to effectively deprive them the opportunity to bring their claims against Olshan. During the hearing, the trial judge asked Mr. Ayala, "[i]f you have to arbitrate this case, will you be in a position to adjudicate your legal rights?" To this question, Mr. Ayala responded, "[n]o sir, I just—no ... I don't have the money to—to do that." Mr. Ayala attested that the costs of arbitration under the AAA represented approximately 45 percent of his annual gross earnings, as well as 28 percent of the Ayalas' combined annual gross income. Based upon these facts, Mr. Ayala testified that he could not afford to vindicate his claims or proceed with the arbitration.

Even more compelling than Ayala's personal inability to pay the arbitration fee, is the actual amount of the fee in relation to the amount of the underlying claim. The cost of arbitration as proposed by the AAA was almost three times the cost of the original contract between the Ayalas and Olshan. Pursuant to the contract with Olshan, the Ayalas paid $22,650 for the installation of foundation stabilization to their home. The arbitration fees, howev-

er, total nearly $70,000. This disparity between the amount in controversy and the amount charged to arbitrate the controversy is so large that the trial court acted within its discretion when it ruled the arbitration agreement unconscionable.

On appeal, Olshan argues that because both parties to the arbitration agreement will owe a substantially similar amount to the AAA for the arbitration, the agreement was not unconscionable. Given the predicate of *Green Tree* and *FirstMerit*, however, we do not find this fact, by itself, dispositive of the issue. The mere fact that both the Ayalas and Olshan will owe a similar amount does not somehow make the amount owed fair, reasonable, or conscionable. Indeed, the fees to be charged for arbitration of the Ayalas' claim are, by any definition, shocking. Thus, while we recognize the strong preference for arbitration under Texas law, we cannot hold that the trial court incorrectly analyzed the law or misapplied the law to the undisputed facts in finding the arbitration clause unconscionable. Here, we find that the trial court had the information necessary to reasonably consider the policy of the unconscionability doctrine and evaluate the oppressiveness of the fees and costs of the arbitration in reaching its decision. Accordingly, Olshan has failed to establish that the trial court abused its discretion in failing to compel arbitration, and we overrule this issue on appeal.

## CONCLUSION

We affirm the judgment of the trial court.

Dissenting opinion by KAREN ANGELINI, Justice.

---

4. This amount was in addition to a $4,130.00 filing fee the Ayalas had already paid to se-

cure the AAA's services.

KAREN ANGELINI, Justice, dissenting.

In one issue, Olshan contends that the trial court abused its discretion in denying Olshan's application for arbitration on the grounds that it was unconscionable. Because I agree with Olshan, I would reverse the trial court's order, and would remand the cause to the trial court for entry of an order compelling arbitration. For these reasons, I respectfully dissent.

### UNCONSCIONABILITY OF THE ARBITRATION AGREEMENT

An agreement to arbitrate is valid and enforceable absent grounds for the revocation of a contract, such as unconscionability. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.001 (Vernon Supp.2005); *Pony Express Courier Corp. v. Morris,* 921 S.W.2d 817, 821 (Tex.App.-San Antonio 1996, no writ). The basic test for unconscionability is whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the arbitration clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract. *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 757 (Tex.2001) (orig.proceeding). Unconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision; and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself. *In re Halliburton Co.,* 80 S.W.3d 566, 571 (Tex.2002) (orig.proceeding). Courts may consider both procedural and substantive unconscionability of an arbitration clause in evaluating the validity of an arbitration provision. *Id.* at 572.

Here, the Ayalas argue that the cost of the proposed arbitration was so prohibitive as to render the arbitration agreement substantively unconscionable. Both the United States and Texas Supreme Courts have recognized the possibility that the excessive costs of an arbitration might, under certain circumstances, render an arbitration agreement unconscionable. *See Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000) (noting that "the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her ... rights in the arbitral forum"); *In re FirstMerit Bank,* 52 S.W.3d at 757. In both *Green Tree* and *In re FirstMerit,* the party resisting arbitration raised an unconscionability defense based upon the allegation that they would be subjected to excessive arbitration fees. *See Green Tree,* 531 U.S. at 80–81, 121 S.Ct. 513; *In re FirstMerit Bank,* 52 S.W.3d at 756–57. In both cases, because the party opposed to the arbitration failed to produce sufficient evidence of cost, the United States and Texas Supreme Courts declined to reach a decision on whether the agreements were unconscionable. *See Green Tree,* 531 U.S. at 90 n. 6, 121 S.Ct. 513 (holding evidence insufficient to defeat arbitration where party opposing arbitration supported motion with evidence of AAA figures on arbitration costs, but failed to show that AAA would actually conduct the arbitration or charge her the fees she identified); *In re FirstMerit Bank,* 52 S.W.3d at 756–57 (holding evidence legally insufficient to defeat arbitration where party opposing arbitration testified that AAA charged a "minimum $2,000 filing fee and a $250/day/party hearing fee, along with several other unspecified fees, for hearings before a three-member panel," but presented no evidence that AAA would conduct arbitration). While neither court specified what quantum of proof is necessary to

meet that burden, the Texas Supreme Court did note that "there is no doubt that *some* specific information of future costs is required." *In re FirstMerit*, 52 S.W.3d at 756; *see also Green Tree*, 531 U.S. at 91, 121 S.Ct. 513 (holding that the mere possibility or "risk" that a plaintiff might bear such costs was too speculative). Here, relying on this language, the Ayalas cite the decisions in *Green Tree* and *In re FirstMerit* as authority for the proposition that a party opposing arbitration need only make some specific showing of actual cost to avoid enforcement of the arbitration agreement. Applying this reasoning, the Ayalas presented the trial court with a copy of an invoice from the AAA showing that they owed $33,150.00, "payment due upon receipt," for their part of the arbitration expenses.[1] Alleging that this amount represented approximately twenty-eight percent of their combined gross annual income, the Ayalas argued that these arbitration costs were excessive and would preclude them from bringing their claims against Olshan. While I do not dispute the Ayalas' allegations that these costs of arbitration are high, their claim of oppressive fees ignores the antecedent question of whether the arbitration agreement was unconscionable at the time it was made. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.022 (Vernon 2005) ("A court may not enforce an agreement to arbitrate if the court finds the agreement was unconscionable *at the time the agreement was made*") (emphasis added).

The determination of whether or not arbitration fees make the agreement to arbitrate unconscionable is a matter that must be determined on a case-by-case basis in light of the state law governing contracts. *Compare J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003) (holding that arbitration agreements are interpreted under general contract principles), *with Green Tree*, 531 U.S. at 90–92, 121 S.Ct. 513 (addressing arbitration with respect to federal statutory claims). Under Texas law, in determining whether a contract is unconscionable, we consider only the circumstances as they existed at contract formation. *See* TEX. BUS. & COM. CODE ANN. § 2.302(a) (Vernon 1994); *see also El Paso Natural Gas Co. v. Minco Oil & Gas Co.*, 964 S.W.2d 54, 61 (Tex. App.-Amarillo 1997) (holding that "[unconscionability] must be assessed as of the time it occurred, not via hindsight"), *rev'd on other grounds*, 8 S.W.3d 309 (Tex.1999). Here, in my review of the record, it is clear that the Ayalas neither argued, nor did the trial court consider, the facts and circumstances as they existed at the time the arbitration agreement was made, choosing instead to focus on their alleged current inability to pay the fees. Holding this provision unconscionable based on this evidence would negate the long-standing public policy in favor of arbitration. Therefore, after carefully reviewing the record, I conclude that the trial court abused its discretion in finding the arbitration agreement unconscionable and unenforceable as a matter of law.

---

1. This amount was in addition to a $4,130.00 filing fee the Ayalas had already paid to se-

cure the AAA's services.