Memorandum Opinion Issued April 23, 2008 Withdrawn; Motion for Rehearing
Denied; Petition for Writ of Mandamus Conditionally Granted; and Memorandum
Opinion filed May 29, 2008








 

Memorandum
Opinion Issued April 23, 2008 Withdrawn; Motion for Rehearing Denied; Petition
for Writ of Mandamus Conditionally Granted; and Memorandum Opinion filed May
29, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00851-CV

____________

 

IN RE MHI PARTNERSHIP, LTD., Relator

 

 



 

ORIGINAL
PROCEEDING

WRIT OF MANDAMUS

 



 

M E M O R
A N D U M   O P I N I O N  ON  REHEARING

Real
parties= in interest motion for rehearing is
denied.  The memorandum opinion issued on April 23, 2008 is withdrawn.  This
memorandum opinion is substituted in its place.

Relator
MHI Partnership, Ltd. seeks a writ of mandamus directing the presiding judge of
the 11th District Court of Harris County, Texas, to vacate an order denying MHI=s motion to compel arbitration.  We
conditionally grant the writ.  

                                                                                    Background

MHI is a
homebuilder that does business as Pioneer Homes and Plantation Homes.  Real
parties in interest are 30 owners of 18 homes purchased in the Villages of Bear
Creek subdivision in Katy, Texas between June 2002 and September 2004.  They
sued MHI for damages or rescission of their home purchases contending that MHI
failed to disclose alleged contamination of their homes= water supply.  

MHI used
three different earnest money contract forms during the relevant time period. 
Two homes were purchased using Form 1 (the oldest form); twelve homes were
purchased using Form 2 (an intermediate form); and four homes were purchased
using Form 3 (the most recent form).  While the three contract forms contain
some differences, those differences are not material to the disposition of this
proceeding.  Each earnest money contract signed by the homeowners includes an
arbitration provision.  

On
August 15, 2005, MHI moved to compel arbitration and to stay the trial court
proceedings.  The homeowners opposed arbitration; among other things, they
contended that the arbitration provisions in their earnest money contracts are
procedurally and substantively unconscionable, and were procured by fraud.  The
trial court gave the parties a year to conduct discovery regarding
enforceability of the arbitration provisions.  Following discovery and
briefing, the trial court held a hearing on the motions to compel on August 7,
2007.[1]  The trial
court orally denied the motion at the hearing=s conclusion.[2] 









                                                       Standard of Review

The
arbitration provisions at issue here recite that they are governed by the
Federal Arbitration Act (AFAA@), 9 U.S.C. '' 1B16.  The homeowners do not dispute this point.  Mandamus is
the appropriate vehicle to seek relief from a trial court order denying a motion
to compel arbitration under the FAA.  In re Bank One, N.A., 216 S.W.3d
825, 826 (Tex. 2007) (orig. proceeding) (per curiam).  To obtain mandamus
relief, the relator must demonstrate that (1) the trial court clearly abused
its discretion; and (2) there is no adequate remedy by appeal.  In re Sw.
Bell Tele. Co., 226 S.W.3d 400, 403 (Tex. 2007) (orig. proceeding).  The
trial court abuses its discretion if it reaches a decision that constitutes a
clear and prejudicial error of law.  Walker v. Packer, 827 S.W.2d 833,
839 (Tex. 1992) (orig. proceeding).  As to factual matters, the relator must
establish that the trial court could have reached only one decision.  Id.
at 840. 

The
party seeking to compel arbitration under the FAA must establish that (1) a
valid arbitration agreement exists, and (2) the claims at issue fall within
that agreement=s scope.  In re Dillard Dep=t Stores, Inc., 186 S.W.3d 514, 515 (Tex. 2006)
(orig. proceeding) (per curiam).  The homeowners= challenges to arbitration in this
case focus solely on validity.  The trial court=s determination of an arbitration
agreement=s validity is a legal question.  Id. 








Contentions
that arbitration provisions are invalid because they are procedurally and
substantively unconscionable must be assessed against the backdrop of the
strong policy favoring arbitration under federal and state law.  See, e.g.,
Cantella & Co. v. Goodwin, 924 S.W.2d 943, 944 (Tex. 1996) (orig.
proceeding) (per curiam) (citing Moses H. Cone Mem=l Hosp. v. Mercury Constr. Co., 460 U.S. 1, 24B25 (1983); Prudential Secs., Inc.
v. Marshall, 909 S.W.2d 896, 898 (Tex. 1995) (orig. proceeding) (per
curiam); Capital Income Props.‑LXXX v. Blackmon, 843 S.W.2d 22, 23
(Tex. 1992) (orig. proceeding) (per curiam); Jack B. Anglin Co. v. Tipps,
842 S.W.2d 266, 268 (Tex. 1992) (orig. proceeding)); see also TMI, Inc. v.
Brooks, 225 S.W.3d 783, 792 (Tex. App.CHouston [14th Dist.] 2007, pet.
denied) (op. on reh=g).  ABecause the law favors arbitration, the party opposing
arbitration bears the burden to prove unconscionability.@  TMI, Inc., 225 S.W.3d at 792
(citing In re FirstMerit Bank, 52 S.W.3d 749, 756 (Tex. 2001) (orig.
proceeding)).  This allocation comports with the policy animating the FAA,
which is Amotivated, first and foremost, by a congressional desire to enforce
agreements into which parties ha[ve] entered.@  Dean Witter Reynolds, Inc. v.
Byrd, 470 U.S. 213, 220 (1985); see also Hall Street Assocs., L.L.C. v.
Mattel, Inc., __ U.S. __, 128 S. Ct. 1396, 1402 (2008) (ACongress enacted the FAA to replace
judicial indisposition to arbitration with a >national policy favoring [it] and
plac[ing] arbitration agreements on equal footing with all other contracts=@) (quoting Buckeye Check Cashing,
Inc. v. Cardegna, 546 U.S. 440, 443 (2006)).  

                            The Homeowners= Defenses to Arbitration








The
existence of the arbitration provisions is undisputed.  The homeowners do not
contend that their claims fall outside the arbitration provisions= scope.  The homeowners acknowledge
the arbitration provisions at issue are Abroad form@ provisions encompassing their claims
for rescission and damages based on the failure to disclose alleged
contamination of their drinking water.  The homeowners focus on validity and
assert that the arbitration provisions:  (1) are procedurally unconscionable;
(2) were induced by fraud; (3) are substantively unconscionable; and (4) are
unconscionable when considered as a whole.  We address these arguments in turn.

                                                        Unconscionability

The
homeowners assert the arbitration provisions are procedurally and substantively
unconscionable.  Procedural unconscionability refers to the circumstances
surrounding the adoption of the arbitration provision; substantive unconscionability
refers to the fairness of the arbitration provision itself.  In re Palm
Harbor Homes, Inc., 195 S.W.3d 672, 677 (Tex. 2006) (orig. proceeding); TMI,
Inc., 225 S.W.3d at 792.  The burden of proving unconscionability rests on
the party seeking to invalidate the arbitration agreement.  In re
Halliburton Co., 80 S.W.3d 566, 571 (Tex. 2002) (orig. proceeding); TMI,
Inc., 225 S.W.3d at 792. 

                         Procedural
Unconscionability & Fraud in the Inducement

The
homeowners argue that the arbitration provisions are procedurally
unconscionable because they were required to execute earnest money contracts
containing these provisions to purchase their homes.  Thus, the homeowners
contend that the earnest money contracts are contracts of adhesion.  See In
re Palm Harbor Homes, Inc., 195 S.W.3d at 678.[3] 









Adhesion
contracts are not necessarily unconscionable, and there is nothing per se
unconscionable about arbitration provisions.  In re AdvancePCS Health, L.P.,
172 S.W.3d 603, 608 (Tex. 2005) (orig. proceeding) (per curiam).  One party=s refusal to contract with another
absent an arbitration provision does not establish procedural
unconscionability.  In re U.S. Home Corp., 236 S.W.3d 761, 764 (Tex.
2007) (orig. proceeding) (per curiam); see also In re Halliburton Co., 80
S.W.3d at 572 (arbitration provision not procedurally unconscionable because
employer made Atake it or leave it@ offer to at‑will employee).  Under the FAA, unequal
bargaining power does not establish grounds for defeating an agreement to
arbitrate absent a well‑supported claim that the clause resulted from the
sort of fraud or overwhelming economic power that would provide grounds for the
revocation of any contract.  In re AdvancePCS Health, L.P., 172 S.W.3d
at 608. 

The
homeowners recognize that adhesion contracts are not per se unconscionable, but
assert that this is a factor to consider in determining unconscionability along
with (1) misrepresentations and omissions regarding the effect of the
arbitration provisions; and (2) efforts to ensure that the homeowners did not
read the arbitration provisions.  The homeowners= assertions of affirmative
misrepresentations, omissions, and efforts to keep them from reading the
provisions parallel the contentions raised in support of their defense of
fraudulent inducement to the arbitration provisions.[4] 
Therefore, we address the homeowners= defenses of procedural
unconscionability and fraudulent inducement together. 








The
homeowners contend MHI=s representatives made the following misrepresentations:  (1)
the arbitration provisions apply only to claims for structural and foundation
problems after the expiration of the one-year warranty; (2) the arbitration
provisions are merely a formality, and any disputes would be settled by
negotiations between the parties; and (3) the homeowners would receive copies
of the earnest money contracts.[5] 

The
homeowners catalogue the following omissions by MHI=s representatives during the process
of explaining the provisions to the homeowners:  (1) the homeowners waived
their rights to a trial in a court of law and to a jury trial; (2) any homeowner
dispute with MHI, its subcontractors, and suppliers would be arbitrated and
administered by the American Arbitration Association (AAAA@) in accordance with the Construction
Industry Arbitration Rules; (3) MHI=s subscontractors and suppliers may
be able to force the homeowners to arbitrate any claim the homeowners may have
against them; (4) the homeowners would have to pay all the arbitration administrative
filing fees; (5) the homeowners would have to pay, in advance of arbitration,
half of the arbitrators= fees; and (6) the homeowners would have to pay costs and
expenses to MHI, including attorney=s fees, if they opposed arbitration. 








The
homeowners= allegations of misrepresentations and omissions all relate to not having
read or understood the contracts before signing them.  Texas law presumes a
party who signs a contract has read it and knows of its contents.  Cantella
& Co., 924 S.W.2d at 944.  Consistent with this principle, A[w]hen the arbitration provision in
an agreement is conspicuous, a party may not avoid its effect by asserting that
he did not notice the provision or that it was not pointed out to him.@  Beldon Roofing & Remodeling
Co. v. Tanner, No. 04-97-00071-CV, 1997 WL 280482, at *2 (Tex. App.CSan Antonio May 28, 1997, orig.
proceeding) (per curiam) (not designated for publication). 

The
first page of each earnest money contract states, in all capital letters, that
the contract is subject to arbitration under the FAA.  Each arbitration
provision is separately numbered and typed in all capital letters.  Two of the
contract forms required the homeowners to sign their initials immediately after
the arbitration provision, while the third contract form required the
homeowners= initials on the same page as the arbitration provision.  The homeowners
identify no asserted ambiguities in the arbitration provisions.  The
arbitration provision in each iteration of the earnest money contract is both
conspicuous and unambiguous.  See Cantella & Co., 924 S.W.2d at 944
(arbitration clause was Aquite conspicuous@ because it was separately numbered, captioned
in bold print, and in all capital letters); In re Orkin Extermination Co.,
No. 01-01-00035-CV, 2001 WL 871738, at *1 (Tex. App.CHouston [1st Dist.] Aug. 2, 2001,
orig. proceeding) (not designated for publication) (arbitration clause was
conspicuous because it was identified in a separately numbered paragraph, with
a paragraph heading in all bold capital letters); cf. Dresser Indus., Inc.
v. Page Petroleum, Inc., 853 S.W.2d 505, 508, 511 (Tex. 1993) (conspicuousness
requirement, in context of express negligence doctrine, mandates that something
must appear on the face of the contract, such as larger type, or contrasting
colors, to attract the attention of a reasonable person).  Under these
circumstances, the asserted misrepresentations and omissions are insufficient
to establish procedural unconscionability.








Each
earnest money contract also contains a disclaimer under which the homeowners
stipulated that MHI=s representatives did not make any oral statements, promises,
or representations that add to, change, modify, or vary the terms of the
contract; MHI would not be bound by such oral representations, if any; and the
homeowners did not rely on any representations not contained in the contract
when they signed the contract.  MHI argues that this disclaimer bars the
homeowners= claims for fraud in the inducement.  Relying on Schlumberger
Technology Corp. v. Swanson, 959 S.W.2d 171, 181 (Tex. 1997), the
homeowners argue that such disclaimers do not preclude their fraud in the
inducement claims.  

We need
not decide whether the disclaimer bars the homeowners= claims for fraud in the inducement. 
Even without a disclaimer, the homeowners= asserted reliance on MHI=s alleged oral representations
contradicting the unambiguous and conspicuous arbitration provisions was not
justified as a matter of law.  See TMI, Inc., 225 S.W.3d at 795 (party=s claimed reliance on an oral
representation that is directly contradicted by the express, unambiguous terms
of an arbitration provision is not justified as a matter of law) (citing DRC
Parts & Accessories, L.L.C. v. VM Motori, S.P.A., 112 S.W.3d 854, 858
(Tex. App.CHouston [14th Dist.] 2003, pet. denied) (op. on reh=g en banc)).  Because justifiable
reliance is an essential element of any claim for fraudulent inducement, the
absence of such reliance forecloses the homeowners= fraudulent inducement contention as
a matter of law.  See Id.; DRC Parts & Accessories, L.L.C.,
112 S.W.3d at 858.  








The
homeowners cannot change this conclusion by contending that MHI=s representatives rushed them through
reading the earnest money contract.  The homeowners contend that MHI=s representatives thwarted their
ability to read the contracts before signing them by (1) stating they were in a
hurry and there was no time to read the earnest money contract; (2) stating it
was not necessary for the homeowners to read the earnest money contract because
they would explain the contract to the homeowners; and (3) holding the earnest
money contract at a distance from the homeowners and obscuring the language
with a hand.  They contend these circumstances defeat any presumption that the
earnest money contracts were read and understood.  See Brown v. Aztec Rig
Equip., Inc., 921 S.W.2d 835, 846 (Tex. App.CHouston [14th Dist.] 1996, writ
denied) (rule that a person having the capacity to enter into a contract knows
the meaning of words used in the contract and fully comprehends the contract=s legal effect does not operate when Atrick or artifice is resorted to@ and prevents the party from reading
the contract).  

The
homeowners indicated they read and understood the arbitration provisions by
initialing each page of the earnest money contracts and numerous clauses in the
contracts, and by signing the earnest money contracts.  The homeowners do not
assert that they requested additional time to read the contracts and were
denied.  They do not assert that they asked MHI=s representatives to go back over the
contracts and were refused.  Claims of lack of sophistication, lack of explanation,
and lack of time to review a contract containing a conspicuous and unambiguous
arbitration provision do not trump the strongly favored status of arbitration
under the FAA.  See In re Palm Harbor Homes, Inc., 195 S.W.3d at 679. 
It is incompatible with arbitration=s strongly favored status to conclude
that assertions of this nature establish procedural unconscionability and
thereby defeat conspicuous arbitration clauses in contracts initialed and
signed by the homeowners.  These assertions fall short of establishing that the
homeowners were foreclosed from reading conspicuous and unambiguous arbitration
provisions they are presumed to have read.  See id.; EZ Pawn Corp. v.
Mancias, 934 S.W.2d 87, 90 (Tex. 1996) (orig. proceeding) (per curiam); see
also Cantella & Co., 924 S.W.2d at 944 (ABecause of the document=s nature, combined with the legal
presumption that a party who signs a contract knows its contents, we reject the
City=s argument that it did not agree to
arbitrate because it did not see the arbitration provision in the agreement@).  

We
conclude the arbitration provisions are not procedurally unconscionable, and
claims of fraud in the inducement do not bar their enforcement.

                                                  Substantive
Unconscionability








The test
for substantive unconscionability is whether, given the parties= general commercial background and
the commercial needs of the particular trade or case, the arbitration clause is
so one-sided that it is unconscionable under the circumstances existing when
the parties made the contract.  In re Palm Harbor Homes, Inc., 195
S.W.3d at 678; In re FirstMerit Bank, N.A., 52 S.W.3d at 757.  The
homeowners assert the arbitration agreements are substantively unconscionable
because they cannot afford the arbitration fees and are effectively prevented
from pursuing their claims.  

The
party resisting arbitration based on assertions of burdensome arbitration costs
must establish the likelihood that A>arbitration would be prohibitively
expensive.=@  Am. Life Ins. Co. v. Orr, 294 F.3d 702, 711 (5th
Cir. 2002) (quoting Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 81
(2000)).  Without more, the possibility that a party may have to share in the
payment of the arbitrators= fees is insufficient to invalidate an arbitration
agreement.  Id. at 712.  When a party fails to specify excessive
arbitration costs, and relies instead on speculation that the party will be
burdened with prohibitive costs, a court is not allowed to invalidate the
arbitration agreement.  Id.  

The
homeowners submitted the affidavit of Richard Melamed, a board certified
residential real estate law attorney, who estimated that the personal costs of
arbitration for the owner of each home would be $6,000 in administrative fees,
$2,500 in services fees, and a deposit of $24,750 to $41,250 for half of the
arbitrator fees.  Melamed based his calculations on the AAA=s Construction Industry Arbitration
Rules and an estimation of the length of each arbitration proceeding set forth
in the affidavit of Jim Culpepper, an attorney for the homeowners.  Each
homeowner also submitted an affidavit setting forth his or her financial
situation, including annual income at the time they purchased their homes and
at the time they filed the underlying lawsuit, the purchase price of their
homes, and the damages they are seeking. 








The
homeowners rely on Olshan Foundation Repair Co. v. Ayala, 180 S.W.3d 212
(Tex. App.CSan Antonio 2005, pet. denied), for the proposition that burdensome costs
render arbitration provisions unconscionable.  In Olshan, the Ayalas
brought claims for breach of contract, DTPA violations, fraud, and negligence
in connection with the installation of foundation stabilization to their home. 
Id. at 214.  The Ayalas provided information that the AAA would preside
over the arbitration; a panel of three structural engineers approved by the AAA
would conduct the arbitration; and the arbitration would cost more than
$63,670.  Id. at 216.  The Ayalas further provided the court with a copy
of an invoice from the AAA showing that they owed $33,150, Apayment due upon receipt,@ for their part of the arbitration
expenses.  Id.  The court of appeals held the trial court acted within
its discretion when it ruled the arbitration agreement unconscionable.  In so
doing, it focused on the Ayalas= personal inability to pay the arbitration fee; the court
also stressed that the arbitration cost almost three times the amount of the
original contract between the parties, under which the Ayalas paid $22,650.  Id.


Olshan is distinguishable.  Unlike Olshan,
the homeowners here have not provided an invoice from the AAA for their part of
the expenses, or established that the cost of the arbitration is almost three
times the cost of the purchase of their homes.  Moreover, the homeowners have
not shown that the expense of impaneling three attorneys or engineers is
inevitable.  One contract form provides that the parties may agree on one
arbitrator, but if they cannot agree, the homeowner and MHI each will submit a
name in writing, and those two named arbitrators will choose the third
arbitrator.  The other two contract forms provide that the parties may agree on
one arbitrator, but if they do not, a panel of three arbitrators will be
appointed in accordance with the arbitration rules.  








The homeowners
sought in the trial court to establish the cost of proceeding with three
arbitrators.  They did not try to establish the cost of proceeding with a
single arbitrator.  To the contrary, the homeowners emphatically foreclosed the
possibility of proceeding with a single arbitrator.  The homeowners= attorney, Jim Culpepper, states in
his affidavit that the homeowners Acannot agree to less than three
arbitrators@ because a Asingle arbitrator has an extreme amount of power and control
in the case. . . . and [t]he single arbitrator=s award is not subject to a system of
checks and balances.@  Mr. Culpepper=s statements appear under a heading
announcing, AIt is Essential for Plaintiffs= [sic] to Have an Arbitration with
Three Arbitrators.@

Mr.
Culpepper=s pronouncement is carried through in Mr. Melamed=s affidavit, and in the affidavit of
each homeowner.  Mr. Melamed=s affidavit contains a heading stating, AMHI Arbitration Agreement States
There Shall Be Three Arbitrators Appointed.@  Each homeowner=s affidavit contains an identical
paragraph under the heading, AThe Earnest Money Contract Requires Three Arbitrators Will Be
Appointed.@  The following statement appears under that heading: AMr. Culpepper informs me that the
Earnest Money Contract requires that there shall be three arbitrators to
determine . . . any claims that the homeowner brings against MHI.@

The
accuracy of the information attributed to Mr. Culpepper is open to question; as
discussed above, all versions of the earnest money contract allow the use of a
single arbitrator.  What cannot be questioned is the repeated, emphatic and
unequivocal rejection of using a single arbitrator established in the
affidavits of the homeowners and their attorney.

The
homeowners argue on rehearing that some information about the potential cost of
a single arbitrator can be gleaned from references to the arbitrators= hourly rates.  The homeowners also
argue that Ait cannot be their burden to prove whether or not MHI will agree to one
arbitrator that each homeowner finds acceptable.@








Both
arguments miss the mark.  The homeowners carefully structured their proof in
support of substantive unconscionability so as to exclude any possibility of
using a single arbitrator.  Consideration of the cost of a single arbitratorCor of the likelihood that both sides
could agree to a single arbitratorCwas foreclosed because the homeowners
took that option off the table.  They are left to argue substantive
unconscionability based upon evidence that assumes a substantially more
expensive procedure.  This does not suffice to establish substantive
unconscionability.  See Aspen Tech., Inc. v. Shasha, No. 14B07-00303-CV, 2008 WL 2130572 (Tex.
App.CHouston [14th Dist.] 2002, orig.
proceeding) (rejecting reliance on cost of arbitration administered by AAA to
establish substantive unconscionability because Athe AAA may administer the
arbitration, but the parties are not required to have the arbitration
administered by the AAA@).  Substantive unconscionability threatens to become the
exception that swallows the rule if all that must be done to avoid arbitration
is to assume the most expensive possible scenario.

The
homeowners cannot carry their burden to establish excessive arbitration costs
by insisting that a single arbitrator is inadequate, and that only a more
expensive three-arbitrator panel will be employed.  This approach impermissibly
presumes that arbitration is disfavored.  Texas law indulges no such
presumption.  It presumes just the opposite.  See In re FirstMerit Bank,
N.A., 52 S.W.3d at 753 & n.n.7, 8; see also Cantella & Co.,
924 S.W.2d at 944 (ACourts must resolve any doubts about an agreement to
arbitrate in favor of arbitration@).

The
homeowners also rely on a wrongful employment termination case, In re Luna,
175 S.W.3d 315 (Tex. App.CHouston [1st Dist.] 2004, orig. proceeding [mand. pending]). 
In Luna, an affidavit by an experienced employment lawyer established
the average cost for an arbitration for a case similar to the plaintiff=s in Harris County.  Id. at
319.  The plaintiff stated in his affidavit that two lawyers refused to take
his case on a contingency basis due to the arbitration agreement, and that he
would be unable to afford the arbitration fees.  Id. at 319B20.  The court held that the costs
provision weighed heavily toward a finding of substantive unconscionability.  Id.
at 322.  The Luna court also found the arbitration agreement=s preclusion of reinstatement and
punitive damages provided by the Texas Labor Code tended to weigh towards a
finding that the agreement=s provisions as a whole were substantively unconscionable.  Id.
at 324.  








The
homeowners= reliance on Luna is misplaced.  They make no claim of inability
to obtain legal representation due to the arbitration provisions.  Nor have the
homeowners asserted that the arbitration provisions have limited any specific
types of damages.  

As part
of their substantive unconscionability challenge, the homeowners renew their
complaint that the contracts are contracts of adhesion and assert they did not
voluntarily agree that they had the financial capacity to participate in
arbitration.  Under the arbitration provisions contained in Forms 2 and 3, MHI
and each homeowner represented that they had Aadequate financial capacity to avail
themselves of the arbitration remedies provided herein and that participation
in arbitration will not constitute a financial hardship.@  As noted above, adhesion contracts
are not per se unconscionable.  In re AdvancePCS Health, L.P., 172
S.W.3d at 608.  Moreover, the homeowners= asserted failure to read the
contracts before signing them does not make them substantively unconscionable
because Texas law presumes parties to a contract have read it and are familiar
with its contents.  Cantella & Co., 924 S.W.2d at 944.  The
representations of financial capacity therefore cannot be disregarded so
easily.  








The
homeowners further argue that MHI=s representatives never asked about
their ability to pay the arbitration fees, or if such payments would create a
financial hardship for them.  They also claim substantive unconscionability
because the arbitration provisions require the homeowners to pay MHI=s attorney=s fees if they do not prevail without
a reciprocal requirement providing that MHI would pay the homeowners= attorney=s fees if they prevail.  The
homeowners did not raise these arguments in support of their substantive
unconscionability defense in the trial court; these arguments appeared for the first
time in response to MHI=s petition for writ of mandamus.  Therefore, we do not
address these arguments.  See Nabors Drilling USA, L.P. v. Carpenter,
198 S.W.3d 240, 249 (Tex. App.CSan Antonio 1996, orig. proceeding); In re Steger Energy
Corp., Nos. 04-01-00556-CV & 04-01-00670-CV, 2002 WL 663645, at *4
(Tex. App.CSan Antonio 2002, orig. proceeding) (op. on reh=g).[6] 


We
conclude the homeowners have not established that the arbitration agreements
are so burdensome as to render them substantively unconscionable.  

    Unconscionability of the Arbitration
Agreements As A Whole

The
homeowners argue the cumulative effect of the provisions in the arbitration
agreements renders the agreements unconscionable.  Texas courts must consider
the arbitration agreement as a whole.  In re Luna 175 S.W.3d at 328; see
also Pony Express Courier Corp. v. Morris, 921 S.W.2d 817, 822 (Tex. App.CSan Antonio 1996, no pet.) (per
curiam) (trial court abused its discretion by determining unconscionability
without sufficient facts before the court to determining if agreement was
unconscionable as a whole).  Because we already have rejected the homeowners= arguments, we cannot say the
arbitration agreements are unconscionable as a whole.  

                                                                Conclusion








We hold the trial court abused its
discretion in denying MHI=s motion to compel arbitration.[7] 
We therefore conditionally grant the petition for a writ of mandamus, and
direct the trial court vacate its order denying MHI=s motion to compel arbitration.  The writ will issue
only if the trial court fails to act in accordance with this opinion.

 

 

 

 

/s/        William J. Boyce

Justice

 

 

 

 

Petition Conditionally Granted and Memorandum
Opinion filed May 29, 2008.

Panel consists of Chief Justice
Hedges, and Justices Anderson and Boyce.









[1]  When the
underlying case was filed on June 29, 2005, two cases related to the same
subdivision, both of which were filed on June 27, 2005, were pending:  (1) No.
2005-42002, Marcus J. Vondenstein, et al. v. MHI Partnership Ltd.,
pending in the 280th District Court; and (2) No. 2005-42004, Sean Henderson,
et al. v. MHI Partnership, Ltd., pending in 215th District Court.  In Vondenstein,
the 280th District Court denied MHI=s
motion to compel arbitration.  MHI filed a petition for a writ of mandamus in
the First Court of Appeals, which denied the petition in a per curiam opinion. 
See In re MHI P=ship,
Ltd., No. 01-06-00121-CV, 2006 WL 3476821 (Tex. App.CHouston [1st Dist.] Dec. 1, 2006, orig.
proceeding) (per curiam).  In Henderson, the 215th District Court
granted MHI=s motion
to compel arbitration.  The homeowners in Henderson did not seek
appellate review of the order compelling arbitration.  





[2]  There is no
written order denying MHI=s
motion to compel.  At the end of the hearing on the motion to compel
arbitration, the trial court stated, AI=ll respectfully deny the
motion.@  Texas Rule
of Appellate Procedure 52.3(j)(1)(A) requires Aa
certified or sworn copy of any order complained of, or any other document
showing the matter complained of . . . .@ 
Tex. R. App. P. 52.3(j)(1)(A) (emphasis added).  An oral ruling on the record
satisfies the requirements of Rule 52.3(j)(1)(A).  In re Bill Heard
Chevrolet, Ltd., 209 S.W.3d 311, 314 (Tex. App.CHouston [1st Dist.] 2006, orig. proceeding); In
re Bledsoe, 41 S.W.3d 807, 811 (Tex. App.CFort
Worth 2001, orig. proceeding); In re Hamrick, 979 S.W.2d 851, 852 n.3
(Tex. App.CHouston
[14th Dist.] 1998, orig. proceeding).  





[3]  Parties
seeking to invalidate arbitration provisions have invoked the same contract of
adhesion contention in arguing substantive unconscionability.  See In re
Palm Harbor Homes, Inc., 195 S.W.3d at 678.





[4]  A[W]ith a fraudulent
inducement claim, the elements of fraud must be established as they relate to
an agreement between the parties.@ 
Haase v. Glazner, 62 S.W.3d 795, 798B99
(Tex. 2001).  The elements of fraud are:  (1) the defendant made a material
representation; (2) the defendant knew the representation was false, or made it
recklessly as a positive assertion without any knowledge of its truth; (3) the
defendant intended to induce the other party to act upon it; and (4) the other
party actually and justifiably relied upon the representation, and thereby
suffered injury.  Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.,
51 S.W.3d 573, 577 (Tex. 2001).  





[5] 
Additionally, homeowners Alberto Diaz and Gina D=Agostino
Diaz complain that after they signed contract Form 1, MHI contacted them and
told them they needed to sign a new earnest money contract.  They assert that 
MHI told them the provisions of the first and second earnest money contracts
were the same.  The Diazes complain that the arbitration provision in contract
Form 2 contains more onerous terms than those in contract Form 1.  These
separate arguments do not establish unconscionability for the same reasons that
the homeowners=
general misrepresentation arguments do not establish unconscionability. 





[6]  The
homeowners argued in the trial court that the arbitration provisions are
substantively unconscionable because (1) the arbitration proceedings are to be
conducted in accordance with the AAA=s
Construction Industry Arbitration Rules, which are for more sophisticated
parties such as developers, and (2) the arbitrators, who are attorneys with
significant experience in the single family residential construction industry,
will have a natural bias toward residential developers.  Because the homeowners
have abandoned these contentions by omitting them from their response to MHI=s petition, we do not
consider them.  The homeowners also argued in the trial court that an
arbitration panel does not have the power to craft and enforce equitable
remedies under these circumstances, but likewise appear to have abandoned this
position by omitting it from their brief in this court.  





[7]  Because of
our disposition, it is not necessary to address MHI=s argument that the affidavits submitted in
support of the homeowners=
response to the motion to compel arbitration are not competent evidence.