**D.R. HORTON, INC., Appellant,**

**v.**

**Aurora BROOKS, Appellee.**

**In re D.R. Horton, Relator.**

**Nos. 14–06–00099–CV, 14–06–00152–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 2, 2006.

Michael D. Mitchell and Stephen E. Hart, Houston, for appellant.

Andrew S. Golub, Houston, for appellee.

Panel consists of Chief Justice HEDGES, and Justices YATES and GUZMAN.

## OPINION

LESLIE B. YATES, Justice.

Two causes are before us, both involving the enforceability of an arbitration clause contained in D.R. Horton, Inc.'s employee handbook acknowledgment form. D.R. Horton filed a motion to compel arbitration in the trial court pursuant to the arbitration clause, and the trial court denied the motion. D.R. Horton sought review of the trial court's order in this court, filing an interlocutory appeal and a petition for a

1. We also deny the motion to dismiss D.R. Horton's appeal for lack of jurisdiction filed by Aurora Brooks, appellee and real party in interest, which was taken with the case. *See In re D. Wilson Constr. Co.,* 196 S.W.3d at 780.

writ of mandamus. For the reasons discussed below, we conditionally grant D.R. Horton's petition for mandamus, Cause No. 14–06–00152–CV, and, having granted full relief under our mandamus jurisdiction, we dismiss as moot D.R. Horton's interlocutory appeal, Cause No. 14–06–00099–CV. *See In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 780 (Tex.2006) (orig. proceeding).[1]

## BACKGROUND

Aurora Brooks was hired by D.R. Horton in April of 2004. Upon employment, Brooks, an at-will employee, received a copy of D.R. Horton's Employee Handbook ("Handbook") and signed the attached "Employee Acknowledgment Form" (the "EAF"). The EAF contains five paragraphs, four of which acknowledge Brooks's receipt of the Handbook and affirm her understanding of D.R. Horton's employment policies. One paragraph contains an agreement to submit any disputes arising from her employment, or its termination, to arbitration.

When Brooks's employment was terminated, she filed suit against D.R. Horton under the Texas Commission on Human Rights Act,[2] claiming she had been treated in a discriminatory manner due to her age. D.R. Horton filed its motion to dismiss and compel arbitration and attached a copy of the EAF signed by Brooks. The trial court denied the motion without explanation. D.R. Horton then filed its interlocutory appeal and petition for mandamus relief. We begin by determining which of these procedural vehicles should be used

2. *See* TEX. LAB.CODE ANN. §§ 21.001–.556 (Vernon 2006).

to challenge the trial court's denial of arbitration in this case.

## INTERLOCUTORY APPEAL OR MANDAMUS?

■ If arbitration is denied under the Texas Arbitration Act ("TAA"),[3] the trial court's order may be challenged through an interlocutory appeal. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.098(a); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 271–72 (Tex.1992). However, relief from a denial of arbitration under the Federal Arbitration Act ("FAA")[4] must be pursued through mandamus. *See In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69–70 (Tex.2005); *Jack B. Anglin Co.*, 842 S.W.2d at 272; *see also In re D. Wilson Constr. Co.*, 196 S.W.3d at 780 n. 4 (reaffirming that review of denial of arbitration under the FAA by interlocutory appeal falls outside of appellate jurisdiction).

■ Here, the arbitration clause provides that arbitration is pursuant to the provisions of the FAA or, if inapplicable, a state arbitration statute. Neither party contends the FAA is inapplicable, and, in the trial court, D.R. Horton sought to compel arbitration under the FAA.[5] When an employment agreement references both the FAA and the TAA, the FAA prevails. *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 91 (Tex.1996). Thus, we review denial of arbitration through D.R. Horton's mandamus proceeding.

## STANDARD OF REVIEW

■ A writ of mandamus will issue to correct a clear abuse of discretion when there is no adequate remedy by appeal. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992); *see also In re Nexion Health*, 173 S.W.3d at 69–70. A trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex.2005). The relator has the burden to establish that the trial court abused its discretion. *See id.* There is no other adequate remedy at law when a trial court improperly denies a motion to compel arbitration under the FAA. *In re Nexion Health*, 173 S.W.3d at 69–70.

## DISCUSSION

■ A party moving to compel arbitration must prove the existence of a valid arbitration agreement and a dispute falling within the scope of the agreement. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 605 (Tex.2005); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex.2003). If the trial court finds there is a valid agreement to arbitrate, the burden shifts to the party opposing arbitration to prove his defenses. *Davidson*, 128 S.W.3d at 227. The trial court's determination of the arbitration agreement's validity is a legal question subject to de novo review. *Id.*

■ There is a strong presumption in favor of arbitration once the existence of a valid arbitration agreement has been shown. *See id.* If there is a valid arbitration agreement encompassing the claims and the party opposing arbitration fails to prove his defenses, the trial court has no

---

**3.** *See* TEX. CIV. PRAC. & REM.CODE ANN. ch. 171 (Vernon 2005).

**4.** *See* 9 U.S.C. §§ 1–16 (2006).

**5.** D.R. Horton noted in its motion, however, that an analysis under the TAA was not necessary if the arbitration clause was enforceable under the FAA.

discretion but to compel arbitration. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex.2001). In this case, the parties do not dispute that Brooks's claim falls within the scope of the arbitration clause; the issue presented concerns the validity of the agreement.

We determine the validity of arbitration agreements by applying state-law contract principles. *Davidson*, 128 S.W.3d at 227. When construing the agreement, our primary concern is to ascertain the intent of the parties as expressed in the instrument. *Id.* at 229. In doing so, we examine the entire writing as a whole and give effect to all its provisions. *Id.*

The EAF signed by Brooks and attached to D.R. Horton's motion to compel contains the following arbitration clause:

> In the event there is any dispute arising out of your employment with D.R. Horton, Inc., or the termination thereof, which the parties are unable to resolve through direct discussion or mediation, regardless of the kind or type of dispute, you and D.R. Horton, Inc. agree to submit all such disputes exclusively to final and binding arbitration pursuant to the provisions of the Federal Arbitration Act, or, if inapplicable, any applicable state arbitration stature [sic], or any successor or replacement statutes, upon a request submitted in writing to the Legal Department in the Corporate office within one (1) year of the date when the dispute first arose, or within (1) year of the termination of employment, whichever occurs first. Any failure to request arbitration timely shall constitute a waiver of all rights to raise any claims in any forum arising out of any

> dispute that was subject to arbitration. The limitations period set forth in this paragraph shall not be subject to tolling, equitable or otherwise.

Because this provision expressly requires both parties to arbitrate disputes regarding Brooks's employment, D.R. Horton contends the trial court had no discretion but to compel arbitration. We agree.

An at-will employee who receives notice of an employer's arbitration policy and continues or commences employment accepts the terms of the agreement as a matter of law. *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162 (Tex. 2006); *see In re Halliburton Co.*, 80 S.W.3d 566, 568 (Tex.2002). Therefore, by signing the EAF and commencing employment, Brooks accepted the terms of this arbitration provision as a matter of law, and a valid agreement to arbitrate was formed. *See, e.g., In re Dallas Peterbilt*, 196 S.W.3d at 162; *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006); *see also Davidson*, 128 S.W.3d at 229. Brooks does not deny that she signed the EAF nor argue she did not have notice of its provisions. Instead, Brooks claims the arbitration provision is unenforceable because it is illusory, its terms are too indefinite to form a binding contract, and it is unconscionable.

### 1. Is the Arbitration Agreement Illusory?

An illusory promise is one that fails to bind the promisor because he retains the option of discontinuing performance without notice. *See O'Farrill Avila v. Gonzalez*, 974 S.W.2d 237, 244 (Tex. App.-Austin 1998, pet. denied). Like other contracts, arbitration agreements must be supported by consideration. *In re Palm Harbor Homes*, 195 S.W.3d at 676.

Under Texas law, at-will employment does not preclude formation of other contracts between employer and employee, so long as neither party relies on continued employment as consideration for the contract. *Davidson*, 128 S.W.3d at 228. Mutual promises to submit employment disputes to arbitration constitute sufficient consideration to support an arbitration agreement; however, if the employer can avoid its promise to arbitrate, the agreement is illusory. *See, e.g., id.; In re Halliburton*, 80 S.W.3d at 569–70 (concluding agreement was binding on both the employer and the employee and therefore was not illusory).

To support her argument of illusoriness, Brooks relies on the following provisions:

Since the information, policies and benefits described here are subject to change, I acknowledge that revisions to the handbook may occur.... I understand that revised information may supersede, modify, or eliminate existing policies.

[T]his handbook is neither a contract of employment nor a legal document.

D.R. Horton, Inc. reserves the right to revise, supplement, or rescind any policies or portion of the handbook from time to time as it deems appropriate, in its sole and absolute discretion. The only exception to any changes is our employment-at-will policy....

Policies set forth in this handbook are not intended to create a contract, nor are they to be construed to constitute contractual obligations of any kind ... between D.R. Horton, Inc. and any of its employees. The provisions of the handbook have been developed at the discretion of management and, except for its policy of employment-at-will, may be amended or cancelled at any time, at D.R. Horton, Inc.'s sole discretion.[6]

According to Brooks, the first provision is an express reservation of the right to amend or rescind the arbitration clause, and the second statement, contained in the paragraph immediately preceding the arbitration clause, negates D.R. Horton's intent that the EAF is a binding agreement. The cited provisions, however, expressly refer to the Handbook, not the EAF, and there is no provision within the EAF in which D.R. Horton reserves the right to unilaterally amend or rescind the arbitration agreement.

The arbitration clause is further distinguished from the remaining EAF provisions in both its tone and perspective. It contains promises by both D.R. Horton and Brooks to submit their claims to arbitration, stating: "In the event there is any dispute arising out of your employment ... which the parties are unable to resolve[,] ... you and D.R. Horton, Inc. agree to submit all such disputes ... to final and binding arbitration." However, the remaining EAF provisions, narrated from the employee's perspective, are affirmations of the employee's understanding of the Handbook's terms and policies and refer to his or her responsibilities therein. Thus, when the EAF provisions are read as a whole, the tone of the arbitration clause itself evidences an intent that it is a separate agreement with a distinct purpose. The last sentence in the EAF supports this conclusion, stating "I agree, as shown by my signature, to accept, endorse

---

6. The first two provisions are contained the EAF itself, while the latter two are contained in the Handbook.

and abide by all Company policies and procedures *and to arbitrate any disputes.*" (emphasis added). If the agreement to arbitrate was intended to be a company policy or procedure subject to revision at D.R. Horton's discretion, reiterating the employee's agreement to arbitrate is unnecessary.[7]

Brooks further argues that because the EAF is expressly listed in the Handbook's table of contents as a "policy," when the documents are read together, the EAF is subject to unilateral amendment or rescission. But, even construing the arbitration agreement as a Handbook "policy" subject to amendment, the EAF provides that any change in its Handbook policies or information will be communicated through "official notices." Because any changes or amendments must be communicated through notice, the promise to arbitrate is not illusory. *See, e.g., In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 782 (Tex.2006) (stating that when employer adopts or amends a policy, the changes will not affect employees who do not receive notice of the changes and accept them); *In re Halliburton*, 80 S.W.3d at 569–70 (finding arbitration agreement was enforceable because right to amend required a ten–day notice).[8] We reject Brooks's contention that D.R. Horton reserved the right to unilaterally amend or rescind the arbitration agreement.

Brooks claims that *Tenet Healthcare Ltd. v. Cooper*, 960 S.W.2d 386, 389 (Tex. App.-Houston [14th Dist.] 1998, pet. dism'd

w.o.j.), in which this court concluded the agreement to arbitrate was illusory, controls our disposition of this case; however, *Cooper* is distinguishable. In that case, the preface to the employee handbook contained an express reservation by the employer to exercise its discretion regarding dispute resolution procedures, stating:

> As regards the Fair Treatment Procedure, AMI is committed to accepting the obligation to support and assure access to the binding arbitration procedure for solving disputes, if necessary. Situations may arise from time to time which, in the Company's judgment require procedures or actions different than those described in this document or other written policies. Since the Company maintains the sole and exclusive discretion to exercise the customary functions of the management ... the judgment of management shall be controlling in all such situations.

*Id.* at 386–87. This provision is not a mutual agreement to arbitrate. Only the employee agreed to submit disputes to arbitration. Also, in *Cooper*, the employee's agreement to arbitrate was expressly conditioned on continued employment: "I understand AMI makes available arbitration .... I also understand that as a condition of employment and continued employment, I agree to submit any complaints to [arbitration]...." *Id.* at 387. Because continued employment was the only consideration for the agreement to arbitrate, this court stated there was "no mutuality of obligation because [the employer's] agree-

---

7. For the reasons set forth, we also reject Brooks's argument that because D.R. Horton has retained the ability to amend or avoid the arbitration clause at its discretion, its terms are too indefinite to form a binding contract.

8. *See also Hewlett–Packard Co. v. Benchmark Elecs., Inc.*, 142 S.W.3d 554, 563 (Tex.App.-Houston [14th Dist.] 2004, pet. denied) (stating that where contract is silent regarding the date for an action to be taken, courts will construe the contract as requiring such action be taken within a reasonable time).

ment to continue [the employee's] employ-ment was illusory" from the contract's in-ception. *Id.* at 388; *see also Davidson,* 128 S.W.3d at 228 (stating under Texas law neither party can rely on continued employment as consideration for the agreement in an at-will employment rela-tionship). Because the employer had no obligation to perform under the agree-ment, we also rejected its argument that the parties had formed a unilateral con-tract. *See Cooper,* 960 S.W.2d at 389.[9]

Unlike *Cooper,* in this case, the parties entered into a valid mutual agreement to arbitrate that is supported by sufficient consideration, and the trial court had no discretion but to compel arbitration.

**2. Is the Arbitration Agreement Un-conscionable?**

Brooks also argues the arbitration agreement is unenforceable because it is substantively and procedurally unconscion-able. As we noted, Brooks has the burden to prove her defenses to arbitration. *See In re FirstMerit,* 52 S.W.3d at 756.

■■■ Substantive unconscionability refers to the fairness of the arbitration provision itself, and procedural unconscion-ability refers to the circumstances sur-rounding adoption of the arbitration provi-sion. *In re Palm Harbor Homes,* 195 S.W.3d at 677. There is nothing inherent-ly unconscionable about arbitration agree-ments. *In re AdvancePCS,* 172 S.W.3d at 608.

■■■ Brooks contends the arbitration provision is substantively unconscionable because it burdens a party with prohibitive arbitration costs. She argues the arbitra-

tion provision is procedurally unconsciona-ble because the EAF states that it is not a legal, contractual document. We reject Brooks's substantive unconscionability ar-gument as moot because D.R. Horton has agreed to pay all costs associated with the arbitration of their dispute. Further, as discussed in this opinion, the arbitration provision is a valid and enforceable agree-ment. Therefore, Brooks has not estab-lished that the arbitration clause is uncon-scionable.

CONCLUSION

In sum, we conclude that the trial court abused its discretion in failing to order Brooks to arbitrate her claim against D.R. Horton pursuant to the arbitration agree-ment between the parties. We condition-ally grant the writ of mandamus and direct the trial court to vacate the order denying D.R. Horton's motion to compel and enter an order compelling the parties to arbitra-tion. The writ will issue only if the trial court fails to comply with this opinion.

■■■■■

---

**9.** *But see In re Alamo Lumber Co.,* 23 S.W.3d 577, 581 (Tex.App.-San Antonio 2000, pet. denied) (stating *Cooper* failed to correctly con-sider a unilateral contract analysis).