Appeal Dismissed, Petition for Writ of Mandamus Conditionally Granted,
and Opinion filed July 31, 2008








 

Appeal
Dismissed, Petition for Writ of Mandamus Conditionally Granted, and Opinion
filed July 31, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00324-CV

____________

 

DONALD LAWSON, INDIVIDUALLY AND
D/B/A/ V.I.P. HOME INSPECTIONS AND MARK GUILLERMAN, Appellants

 

V.

 

LARRY ARCHER AND WIFE, SUSAN ARCHER, Appellees

 



 

On Appeal from the 165th
District Court

Harris County, Texas

Trial Court Cause No. 2006-62989

 



 

NO. 14-07-00429-CV

IN RE DONALD LAWSON, INDIVIDUALLY AND D/B/A/ V.I.P. HOME INSPECTIONS,
AND MARK GUILLERMAN, Relators



 

ORIGINAL PROCEEDING

WRIT OF MANDAMUS

O P I N I O N








In this consolidated interlocutory appeal and petition for
writ of mandamus, appellants/petitioners Donald Lawson, individually and d/b/a/
V.I.P. Home Inspections, and Mark Guillerman (collectively, AV.I.P.@) challenge the
trial court=s order denying their motion to compel arbitration  of
the claim filed by appellees/real parties in interest, Larry and Susan Archer. 
We conclude we lack jurisdiction over the appeal and therefore dismiss it.  We
further conclude denial of the motion to compel arbitration is a clear abuse of
discretion for which the remedy of appeal is not available and therefore
conditionally grant the petition for writ of mandamus.

Factual
and Procedural Background

In January 2005, the Archers purchased a house from Patricio
Valdes and Gemma Joffrey‑Valdes (Asellers@).  Ironwood
Homes, Inc., d/b/a Ironwood Custom Homes JV1, d/b/a Ironwood Custom Homes of
Houston (AIronwood@) was the original
builder.

Before purchasing the house, Mrs. Archer contracted with
V.I.P. for a home inspection, and on December 1, 2004, the same day the
inspection occurred, Mrs. Archer signed an Inspection Agreement (the AAgreement@).  Guillerman,
the inspector, signed for V.I.P.  The fee for the inspection was $350.00, and,
under the Agreement, V.I.P.=s liability and that of its agents for Afor claims or
damages, costs of defense and suit, attorney=s fees, or
expenses and payment arising out of, or in any way connected with, errors or
omissions in the inspection or in the inspection report@ was limited to
the amount of the fee.  To remove the liability limitation and receive Aan inspection by a
team of experts,@ the customer could opt to pay $5,500.00. 
Mrs. Archer checked the box indicating she did not want this option.  The same
section containing the liability limitation also provided Aany suit brought
against V.I.P. Inspections shall be done within 1 year of the time of
inspection or be forever time barred.@  The Agreement
was to be governed by Texas law.

A completely separate section, captioned AIf We Have a
Dispute,@ provided in its
entirety:








Any matter concerning the interpretation of this
document, the written inspection report, the underlying inspection or any claim
based upon any of them, shall be resolved by agreement between the parties; or,
failing such agreement, and before resorting to arbitration, the parties agree
first to try in good faith to settle the dispute by mediation with a neutral
mediator knowledgeable in and familiar with the home inspection profession,
under the Construction Mediation Rules of the Construction Arbitration
Services. Thereafter, any remaining unresolved controversy or claim concerning
the interpretation of the document, the written inspection report, the
underlying inspection or any claim based upon any of them, shall be resolved by
arbitration in accordance with the parties submitting the dispute shall, by
mutual agreement, appoint three neutral arbitrators knowledgeable in, and
familiar with, the home inspection profession. One of the arbitrators must be a
current member in good standing of the American Society of Home Inspectors with
a minimum of five years full‑time experience as a professional home
inspector. In addition, one arbitrator must be an officer of the Texas
Association of Real Estate Inspectors and another arbitrator must be a member
on the Texas Real Estate Commissions Inspector Committee. The arbitrators shall
follow substantive rules of law. Judgement upon the award rendered by the
arbitrators may be entered in any court having jurisdiction. The prevailing
party shall recover all costs and expenses, including all attorney=s fees and costs and all
arbitration costs and fees from the other party. As to any dispute or
controversy which, under the terms hereof is hereby made subject to
arbitration, no suit at law or in equity based on dispute or controversy shall
be instituted by either party hereto, other than to enforce the award of the
arbitrators.

 

According to Mrs. Archer, Guillerman was rushed, and so he
told her only the cost of the inspection and instructed her where to sign the
Agreement.  Mrs. Archer claimed Guillerman did not advise her of the terms or
provisions in the Agreement, nor did he give her an opportunity to review the
Agreement.

After the Archers closed on the house, they allegedly began
experiencing problems with the home, so they contacted the builder, Ironwood. 
Ironwood chose a forensic engineer to inspect the Archers= home, and the
forensic engineer found several architectural and functional problems.  The
Archers requested that Ironwood remedy the construction‑related problems,
but Ironwood refused.








On October 2, 2006, the Archers sued Ironwood, V.I.P., and
the sellers.  On November 2, 2006, V.I.P. filed both its original answer and a
motion to abate or stay litigation and compel arbitration.  In response, the
Archers filed an opposition to the motion to abate or stay litigation and
compel arbitration.  The trial court subsequently denied V.I.P.=s motion, and
V.I.P. filed a notice of appeal in the trial court and a petition for writ of
mandamus in this court.

Analysis
of the Issues

In both the appeal and the petition for writ of mandamus,
V.I.P. raises a single issue challenging the trial court=s denial of its
motion to abate or stay litigation and compel arbitration.[1] 
Before we decide this issue, however, we must decide whether, and by what
procedural vehicle, we have jurisdiction to review the trial court=s action.

1.       Appeal or
Mandamus

When the Federal Arbitration Act (FAA) applies or when
neither the TGAA nor the FAA applies, mandamus is the appropriate procedure.  D.R.
Horton, Inc. v. Brooks, 207 S.W.3d 862, 866 (Tex. App.CHouston [14th
Dist.] 2006, no pet.) (stating mandamus appropriate for party seeking relief
from denial of arbitration under the FAA); In re Paris Packaging, Inc.,
136 S.W.3d 723, 727 & n.7 (Tex. App.CTexarkana 2004,
orig. proceeding) (holding mandamus appropriate in situation in which neither
TGAA nor FAA applied).








The TGAA does not apply to Aan agreement for
the acquisition by one or more individuals of property, services, money, or
credit in which the total consideration to be furnished by the individual is
not more than $50,000@ unless A(1) the parties to
the agreement agree in writing to arbitrate; and (2) the agreement is signed by
each party and each party=s attorney.@  Tex. Civ. Prac. & Rem. Code ' 171.002(a)(2),
(b).[2] 
The Agreement in the present case set a fee of $350.00 for in the inspection
service.  No attorneys signed the Agreement.  The TGAA therefore does not
apply.

The FAA Aextends to any contract affecting
commerce, as far as the Commerce Clause of the United States Constitution will
reach.@  In re Nexion
Health at Humble, Inc., 173 S.W.3d 67, 69 (Tex. 2005) (per curiam).  ACommerce, as
defined in the FAA, Ameans commerce among the several States .
. . .@  9 U.S.C.A. ' 1 (1999).  When
the arbitration agreement is silent regarding the application of the TGAA or
the FAA, the question of whether the transaction affects interstate commerce,
and thus whether the FAA governs, is one of fact.  In re Educ. Mgmt. Corp.,
14 S.W.3d 418, 422 (Tex. App.CHouston [14th Dist.] 2000, orig.
proceeding).

In the present case, the parties reside and do business in
Texas.  They executed the Agreement in Texas.  The inspected property is in
Texas.  The Agreement provides, AThis agreement
shall be governed by the laws of the State of Texas.@  In short, the
FAA does not apply, and neither party seriously argues it does.[3]

Thus, neither the TGAA nor the FAA applies.  Mandamus is
therefore the appropriate procedure by which we may review the trial court=s denial of the
motion to compel arbitration.  See In re Paris Packaging, 136
S.W.3d at 727 & n.7.[4] 
We dismiss the appeal.








2.       Standard for Mandamus
Relief

 

To be entitled to the requested mandamus relief, V.I.P.
must show that the trial court=s order is a clear abuse of discretion and
that V.I.P. has no adequate remedy by appeal.  See In re Ford Motor Co.,
165 S.W.3d 315, 317 (Tex. 2005) (per curiam).  A trial court abuses its
discretion when it reaches a decision so arbitrary and unreasonable as to
amount to a clear and prejudicial error of law, or if it clearly fails to
correctly analyze or apply the law.  Id.  The relator has the burden to
establish the trial court abused its discretion.  See id.  A trial court=s wrongful refusal
to compel a party=s contractual right to arbitration
warrants mandamus relief.  See In re Prudential Ins. Co. of Am., 148
S.W.3d 124, 138 (Tex. 2004) (in context of case involving contractual waiver of
jury trial, stating court has granted mandamus relief for trial court=s wrongful refusal
to compel arbitration).

3.       Review of
the Order Denying the Motion to Compel Arbitration








A party seeking to compel arbitration must establish (1) an
arbitration agreement exists and (2) the asserted claims fall within the scope
of that agreement.  See In re FirstMerit Bank, N.A., 52 S.W.3d
749, 753 (Tex. 2001); In re Jim Walters Homes, Inc., 207 S.W.3d 888, 896B97 (Tex. App.CHouston [14th
Dist.] 2006, orig. proceeding).[5] 
In the present case, the parties agree an arbitration agreement exists and the
Archers= claims fall
within the scope of that agreement.  Under these circumstances, the burden
shifted to the Archers to raise an affirmative defense to the arbitration.  See
In re AdvancePCS Health L.P., 172 S.W.3d 603, 607 (Tex. 2005) (per curiam).


The Archers contend the arbitration portion (Athe arbitration
clause@) of the Agreement
is substantively unconscionable.[6] 
Unconscionability is a defense to an arbitration agreement.  TMI, Inc. v.
Brooks, 225 S.W.3d 783, 792 (Tex. App.CHouston [14th
Dist.] 2007, pet. denied); see also Brown v. Aztec Rig Equip., Inc., 921
S.W.2d 835, 846 (Tex. App.CHouston [14th Dist.] 1996, writ denied)
(holding unconscionability of a contract is an affirmative defense).  The
defense of substantive unconscionability must specifically relate to the
arbitration portion of the contract, not the contract as a whole, if the
defense is to defeat arbitration.  In re FirstMerit Bank, 52
S.W.3d at 757.  Defenses to the entire contract can be arbitrated.  Id. 
Although Aunconscionability@ has no precise
legal definition, the term generally describes an agreement that is unfair
because of its overall one-sidedness or the gross one-sidedness of one of its
terms.  Olshan Found. Repair Co. v. Ayala, 180 S.W.3d 212, 215 (Tex.
App.CSan Antonio 2005,
pet. denied).  AThe test for substantive unconscionability
is whether, >given the parties= general commercial
background and the commercial needs of the particular trade or case, the clause
involved is so one‑sided that it is unconscionable under the
circumstances existing when the parties made the contract.=@  In re Palm
Harbor Homes, Inc., 195 S.W.3d 672, 678 (Tex. 2006) (quoting In re
FirstMerit Bank, 52 S.W.3d at 757).[7]








We review the trial court=s decision
concerning the unconscionability of an arbitration agreement for an abuse of
discretion.  Ayala, 180 S.W.3d at 214; see TMI, 225 S.W.3d
at 795 (holding trial court abused its discretion in concluding arbitration
clause was procedurally unconscionable when homeowners produced no evidence
supporting all the elements of their defense).  In applying this standard, we
defer to the trial court=s factual determinations while reviewing
its legal conclusions de novo.  Ayala, 180 S.W.3d at 214.  When the
facts are undisputed, a trial court abuses its discretion by incorrectly
analyzing the law or by misapplying the law to the undisputed facts.  Id.
(citing Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992)).

The Archers contend the arbitration clause was
substantively unconscionable in four respects.  First, the specified panel of
arbitrators was not neutral.  Second, the prevailing party is entitled to all
costs and expenses of the arbitration.  Third, damages are limited to the
contract inspection fee.  Finally, the statute of limitations period is
shortened to one year after the inspection. 

Panel composition.  The arbitration clause is the only
evidence the Archers produced to support their claim the panel will be biased. 
Under that clause, the parties are to agree mutually on Athree neutral
arbitrators,@ but the arbitrators must be Aknowledgeable in,
and familiar with, the home inspection profession.@  Additionally,
the parties must select arbitrators belonging to specified professional
organizations:

One of the arbitrators must be a
current member in good standing of the American Society of Home Inspectors with
a minimum of five years full‑time experience as a professional home
inspector.  In addition, one arbitrator must be an officer of the Texas
Association of Real Estate Inspectors and another arbitrator must be a member
on the Texas Real Estate Commissions Inspector Committee.








The Archers rely on cases in which courts have concluded
that an arbitration clause was substantively unconscionable or unfair because
one party controlled the composition of the list from which the arbitrators are
drawn.  See, e.g., McMullen v. Meijer, Inc., 355 F.3d 485,
488, 493B94 (6th Cir. 2004)
(holding arbitrator selection provision unfair and unenforceable when provision
granted employer unilateral control over pool of at least five arbitrators from
which employer and employee would then mutually select one); Floss v. Ryan=s Family Steak
Houses, Inc., 211 F.3d 306, 314 (6th Cir. 2000) (stating arbitral forum
fundamentally unfair when third‑party arbitration services provider hired
by employerCand arguably biased for that reasonChad discretion to
select pool of potential arbitrators); Hooters of Am., Inc. v. Phillips,
173 F.3d 933, 938B39 (4th Cir. 1999) (observing arbitration
rules provided mechanism crafted to ensure biased decisionmaker when employer
selected one of three arbitrators and also created list from which employee=s arbitrator and
third arbitrator were to be selected).

V.I.P. contends these cases are distinguishable from this
case.  For the reasons discussed below, we agree.

First, V.I.P. did not create a list of a limited number of
specific arbitrators from which the parties select a panel.  Instead, it chose
three organizations, none of which, on its face, is necessarily biased.  The
arbitration clause also provides that appointment of the arbitrators shall be
by the parties= Amutual agreement,@ and that the
arbitrators shall be Aneutral.@

Second, the Archers have the burden of proving bias.  The
Archers have presented no evidence of bias on the part of the arbitrators to
whom they will submit the case.[8] 
We do not know who the specific arbitrators will be; and, like the United
States Supreme Court in Gilmer v. Interstate/Johnson Lane Corp., we Adecline to indulge
the presumption that the parties and arbitral body conducting a proceeding will
be unable or unwilling to retain competent, conscientious and impartial
arbitrators.@ 500 U.S. 20, 30 (1991).

The provision establishing the parameters of panel
membership, in and of itself, does not render the arbitration provision
substantively unconscionable.








Costs and expenses of arbitration.  Under the
arbitration provision, A[t]he prevailing party shall recover all
costs and expenses, including all attorney=s fees and costs
and all arbitration costs and fees from the other party.@  The Archers
contend this clause renders the arbitration agreement unconscionable because
(1) the clause unfairly places the burden on the unsuccessful party, and (2)
such costs will be excessive.  V.I.P. observes (1) the Archers pay these costs
and fees only if V.I.P. prevails and (2) the Archers have provided no evidence
of what these costs and fees might be.

Regarding the Archers= first contention,
we agree with V.I.P.=s implicit premise that it would be
speculative, at this stage, to assume V.I.P. will be the prevailing party. 
Additionally, as discussed below, even if the Archers are ultimately
responsible for the arbitration fees and costs, they have presented absolutely
no evidence of what those fees and costs will be.

In support of their second contention, the Archers cite Green
Tree Financial Corp. v. Randolph, 531 U.S. 79 (2000); In re FirstMerit
Bank, 52 S.W.3d 749; and Ayala, 180 S.W.3d 212.  Under both Randolph
and In re FirstMerit Bank, to sustain a defense of unconscionability
based on excessive cost, a party must provide specific evidence it will
actually be charged excessive arbitration fees.  In re U.S. Home Corp.,
236 S.W.3d 761, 764 (Tex. 2007) (per curiam) (citing Randolph, 531 U.S.
at 90B91; In re
FirstMerit Bank, 52 S.W.3d at 757).  In Ayala, the appellees
presented uncontroverted evidence of the total cost of arbitration, an invoice
for their share of the cost, and testimony about the percentage of their annual
incomes these costs represented.  Ayala, 180 S.W.3d at 216.  

But, the Archers have presented no evidence of the costs of
arbitration.  Thus, the record contains no evidence from which we may conclude
that allocating the costs of arbitration renders the arbitration provision
substantively unconscionable.








Limitations on time to bring suit and on amount of
recovery.  A section of the Agreement separate from the arbitration clause
limits the Archers= time to bring suit against V.I.P. to
within one year of the date of the inspection and limits their amount of
recovery to the amount of the inspection fee ($350.00).  The Archers contend
that these limitations render the arbitration agreement substantively
unconscionable.  V.I.P. responds that these limitations relate to the contract
as a whole, and not to the arbitration clause.  See In re FirstMerit
Bank, 52 S.W.3d at 757 (stating, to defeat arbitration, defense of substantive
unconscionability must specifically relate to arbitration clause itself, not to
contract as a whole).

In support of their contention that the limitations render
the arbitration clause unconscionable, the Archers rely on In re Luna,
175 S.W.3d 315 (Tex. App.CHouston [1st Dist.] 2004, orig. proceeding
[mand. pending]).  Unlike this case, in In re Luna, the limitations on
recovery and time to demand arbitration were contained within the arbitration
agreement itself.  See id. at 317 (referring to appellant=s challenge to
several provisions contained in the arbitration agreement).  The Archers argue
that making such a distinction is Aplaying semantics
with the headings in the Inspection Agreement.@  We disagree.

In Universal Computer Consulting Holding, Inc. v.
Hillcrest Ford Lincoln‑Mercury, Inc., this Court considered clauses
limiting one party=s remedies while allowing the other party
to pursue all remedies.  Nos. 14‑04‑00819‑CV, 14-04-01103-CV,
2005 WL 2149508, at *5 (Tex. App.CHouston [14th
Dist.] Sept. 8, 2005, no pet.) (mem. op.).  We observed, A[T]hese clauses .
. . are contained throughout the contract and are not particular to the
arbitration provisions.  Accordingly, Hillcrest=s complaint
pertains to the contracts as a whole and is, thus, subject to arbitration.@  Id.

As in Universal Computer Consulting, the clauses of
which the Archers complain are contained in other portions of the contract and
are not particular to the arbitration provision.  They concern the contract as
a whole and do not render the arbitration clause substantively unconscionable.








The Archers presented no evidence to the trial court
showing that the arbitration agreement is substantively unconscionable.  We
therefore hold the trial court clearly abused its discretion in denying V.I.P.=s motion to abate
or stay litigation and compel arbitration.  Accordingly, we sustain V.I.P.=s sole issue.

Conclusion

We conditionally grant V.I.P.=s petition for
writ of mandamus.  We are confident the trial court will comply with our
holding.  Therefore, writ will issue only if the trial court does not grant
V.I.P.=s motion to abate
or stay litigation and compel arbitration.  We dismiss the appeal for lack of
jurisdiction.

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment rendered
and Opinion filed July 31, 2008.

Panel consists of
Justices Fowler, Frost, and Seymore.









[1]  V.I.P. frames its sole issue as follows:  whether the trial court erred
(appeal) or abused its discretion (petition) Ain refusing to enforce the plain language of the
parties= agreement that required
arbitration before three neutral arbitrators.@ 





[2]  In In re Nexion Health at Humble, Inc., the
Texas Supreme Court held the FAA preempted the section 171.002 provision requiring signature of a party=s counsel in personal injury cases.  173 S.W.3d 67, 69
(Tex. 2005) (per curiam) (citing Tex.
Civ. Prac. & Rem. Code '
171.002(a)(3), (c)).  As discussed below, unlike In re Nexion Health,
the present case does not implicate the FAA.





[3]  On appeal, the Archers argue both the TGAA and the
FAA apply.  In the trial court, however, they relied only on the TGAA, and they
do not provide this court with an argument regarding why the FAA applies.





[4]  In Texas, statutory arbitration is cumulative of the
common law.  Pheng Invs., Inc. v. Rodriquez, 196 S.W.3d 322, 329 (Tex.
App.CFort Worth 2006, no pet.); see Carpenter v. North
River Ins. Co., 436 S.W.2d 549, 553 (Tex. Civ. App.CHouston [14th Dist.] 1969, writ ref=d n.r.e.) (AIn
the many other states having arbitration statutes similar to our 1965 statute,
it is almost uniformly held that the statutory remedy is cumulative and that
the common law remedy remains available to those who choose to use it.@); see also Wylie Indep. Sch. Dist. v. TMC
Foundations, Inc., 770 S.W.2d 19, 22B23
(Tex. App.CDallas 1989, writ dism=d) (referring to legislative enactments in course of determining
enforceability of arbitration agreement not covered by statute).  Both
statutory and common law in Texas favor arbitration.  See Orangefield Indep.
Sch. Dist. v. Callahan & Assocs., 93 S.W.3d 124, 127 n.2 (Tex. App.CBeaumont 2001), rev=d in part on other grounds, 92 S.W.3d 841 (Tex. 2002) (per curiam).





[5]  The courts in these cases were considering
arbitration agreements under the FAA.  See In re FirstMerit Bank, 52 S.W.3d at 753; In re Jim Walters
Homes, Inc., 207 S.W.3d at 896B97.  In the present
case, we have determined the FAA does not apply to the Agreement. 
Nevertheless, even in considering agreements under the FAA, we apply general
contract principles.  See J.M. Davidson, Inc. v. Webster, 128 S.W.3d
223, 227 (Tex. 2003).  For this reason and because, as noted above, statutory
arbitration is cumulative of the common law, we rely, in part, on principles
from cases interpreting agreements under the TGAA and the FAA.





[6]  In the trial court, the Archers also argued fraud in
the inducement.  The Archers have not addressed this defense in their briefing
in this court.  Furthermore, there is no evidence that V.I.P. actually
misrepresented the Agreement=s terms, or
that V.I.P. made any false material representations with regard to the
arbitration clause itself.  Accordingly, the fraudulent inducement defense does
not present a basis for invalidating the arbitration clause.  See In
re FirstMerit Bank., 52 S.W.3d at 758.





[7]  In evaluating the validity of an arbitration
provision, courts may consider both procedural and substantive
unconscionability.  In re Halliburton Co., 80 S.W.3d 566, 572 (Tex.
2002).  Although the Archers refer, in a footnote, to the alleged circumstances
under which Mrs. Archer signed the Agreement, they did not argue procedural
unconscionability in the trial court and do not argue it in this court.  V.I.P.
does not contend the Archers were required to prove both.  At least one federal
case indicates Texas law requires a party prove both in relation to a
arbitration clause.  See Morrison v. Amway Corp., 49 F. Supp. 2d 529,
534 (S.D. Tex. 1998).  Because we conclude the Archers have failed to prove
substantive unconscionability, we need not reach the question of whether they
needed to prove both.





[8]  This is not to say the Archers cannot later object
to a selected arbitrator on the grounds non-disclosure of facts that might
create a reasonable impression of the arbitrator=s partiality.  See Burlington N. R.R. Co. v. TUCO, Inc., 960
S.W.2d 629, 636 (Tex. 1997).