

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

## NUMBER 13-09-00050-CV

SCI TEXAS FUNERAL SERVICES, INC.
D/B/A HIGHLAND MEMORIAL PARK
AND SERVICE CORPORATION
INTERNATIONAL,                                                      APPELLANTS,

v.

LETICIA G. LEAL, ET AL.,                                            APPELLEES.

---

## On Appeal from the 370th District Court
## of Hidalgo County, Texas.

---

## NUMBER 13-09-00054-CV

## IN RE SCI TEXAS FUNERAL SERVICES, INC. D/B/A
## HIGHLAND MEMORIAL PARK
## AND SERVICE CORPORATION INTERNATIONAL

**MEMORANDUM OPINION**

**Before Justices Rodriguez, Garza, and Vela**
**Memorandum Opinion Per Curiam**

SCI Texas Funeral Services, Inc. d/b/a Highland Memorial Park, and Service Corporation International,[1] ("SCI") filed a notice of appeal in cause number 13-09-00050-CV, and a petition for writ of mandamus in cause number 13-09-00054-CV, seeking to compel the trial court to grant SCI's motion to compel arbitration. We dismiss the appeal and deny the petition for writ of mandamus.

## I. BACKGROUND

Through their first amended original petition, filed on or about May 13, 2008,[2] Leticia G. Leal, Frank Garza, Beatriz Cavazos, Maria Elena Cisneros, and Noe Cavazos (the "Garza family"), Catherine Rogers, Evelyn Rogers, and Gerald Rogers (the "Rogers family"), and Petra Lopez, brought suit against SCI alleging wrongdoing associated with the multiple sale of the same burial plot and the desecration of the remains of Rodolfo Garza. They raised causes of action including negligence, fraud, and intentional infliction

---

[1] The specific relationship between these entities appears to be a matter of dispute between the parties. According to affidavit testimony herein, Service Corporation International is a parent company of SCI Texas Funeral Services, Inc. Highland Memorial Park is an unincorporated division of SCI Texas Funeral Services, Inc., and is one of many cemeteries owned and operated by that entity. The relationship between these entities is not the subject of these proceedings, and we do not address the merits of that issue. These entities will be referred to collectively as "SCI."

[2] This lawsuit first originated in June 2004, when Leticia Leal brought suit against SCI based on the events described herein.

of emotional distress.  The factual allegations of their claims, as laid out in their petition, are as follows:

In 1976, SCI sold Petra Lopez four adjoining plots:  Section J, Lot 143, spaces one, two, three, and four.

In 1977, SCI sold the Garza family Section J, Lot 143, space four, which had previously been sold to Petra Lopez, and interred Rodolfo Garza in that plot.

In 1982, SCI sold the Rogers family four adjoining plots:  Section J, Lot 143, spaces five, six, seven, and eight.

In 1997, Petra Lopez requested that her mother be buried in space four.  SCI informed Lopez that it had mistakenly buried another individual in that plot, but the person buried there would be relocated.  Without contacting or informing the Garza family, SCI disinterred Rodolfo Garza and reinterred him in space five, which SCI had previously sold to the Rogers family.

In 2002, Charles Rogers passed away and the Rogers family visited the cemetery to view their plots.  At this point in time, in order to allegedly conceal that Rodolfo Garza had been interred in one of the plots belonging to the Rogers family, SCI removed Garza's headstone, threw it in the weeds behind the cemetery shed, and denied that Garza ever possessed a headstone.

## II. MOTION TO COMPEL ARBITRATION

On June 8, 2008, SCI filed a "Motion to Compel Arbitration and for Abatement of Suit Pending Arbitration" based on an arbitration agreement between Petra Lopez and SCI Texas Funeral Services, Inc.  The arbitration provision, which allegedly requires the arbitration of "any claim purchaser may have against the seller" is located in a contract

3

dated November 12, 2002, whereby Lopez purchased "interment rights, merchandise, and services" for her deceased husband, Valentin Lopez, who was interred in Section J, Lot 143, space two.

SCI sought to arbitrate the claims of Petra Lopez and all other plaintiffs on grounds that their claims were all "factually intertwined," or alternatively, sought arbitration with Petra Lopez and the abatement of the other plaintiffs' claims until the arbitration with Petra was concluded. The motion to compel is supported by the affidavit of Eduvijes "Vicki" Trevino, the general manager of Buena Vista Burial Park, Roselawn Memorial Gardens, and Funeraria del Angel-Buena Vista Funeral Home, and the former manager of Highland Memorial Park; and a contract signed by Petra Lopez.

Plaintiffs filed a verified response to SCI's motion to compel including their live pleading and the affidavit of Petra Lopez. Lopez's affidavit states, in part, as follows:

> My claims in this lawsuit pertain to the burial of my mother, Petra Gutierrez, in Section J, Lot 143, Space 4 at Highland Memorial Park in Weslaco, Texas. I entered into a contract for the purchase of Space 4 in June of 1976 and finished paying all sums due and owing on Space 4 in April of 1979. . . . My mother, Petra Gutierrez, died on February 17, 1997, and was buried on February 20, 1997. . . . The document that was attached to the affidavit of Eduvijes "Vicki" Trevino as Exhibit "A" (and which is attached to my affidavit as Exhibit "1") does not pertain to my mother's burial at all. It pertains to my husband, Valentin Lopez, who died and was buried in June, 2002. My husband was buried in a different space altogether and I am not complaining about any of the goods or services pertaining to his burial.

The trial court held a hearing on the motion to compel and abate on June 26, 2008, and denied the motion on January 13, 2009. The trial court did not specify its rationale for denying the motion.

SCI filed its notice of interlocutory appeal on January 30, 2009. On February 3, 2009, SCI filed its petition for writ of mandamus, a motion for consolidation of the appeal

4

and mandamus, and a motion for temporary relief and expedited consideration asking this Court to stay further proceedings in the trial court, including the trial, currently set for February 17, 2009. This Court granted SCI's motion for consolidation of the appeal and mandamus and ordered the motion for temporary relief and expedited consideration to be carried with the case pending further review of the matters alleged therein. The Court ordered SCI to file its appellate brief in the offices of this Court on or before February 6, 2009, and ordered plaintiffs, the real parties in interest and appellees herein, to file a combined response to relators' petition for writ of mandamus and appellate brief on or before February 10, 2009. These briefs have been duly filed.

### III. FEDERAL ARBITRATION ACT OR TEXAS ARBITRATION ACT

The trial court's order did not specify whether the arbitration agreement in this case was governed by the Federal Arbitration Act ("FAA") or the Texas Arbitration Act ("TAA"). *See* 9 U.S.C. §§ 1-16 (1999) (FAA); TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001-.098 (Vernon 1997 and Supp. 2008) (TAA). Therefore, SCI seeks review of the order denying arbitration both by mandamus and interlocutory appeal. *See Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992) (providing that litigants alleging entitlement to arbitration under the FAA and TAA must pursue parallel proceedings).

The FAA applies to transactions that involve commerce. *See* 9 U.S.C. § 2 (2005). "Commerce" has been broadly defined and encompasses contracts relating to interstate commerce. *See In re Gardner Zemke Co.*, 978 S.W.2d 624, 626 (Tex. App.–El Paso 1998, orig. proceeding). The FAA does not require a substantial effect on interstate commerce; rather, it requires commerce to be involved or affected. *See L & L Kempwood*

5

*Assocs., L.P. v. Omega Builders, Inc. (In re L & L Kempwood Assocs., L.P.),* 9 S.W.3d 125, 127 (Tex. 1999) (orig. proceeding).

According to affidavit testimony proffered by Trevino, Highland Memorial Park sells goods that are purchased or manufactured outside of Texas; sells burial spaces and goods and services to out of state and international customers; and utilizes goods purchased or manufactured outside of Texas in its business. Trevino testified that the transactions with Petra Lopez, like all of Highland's transactions, involve interstate commerce. We conclude that the contracts at issue evidence "transactions involving commerce" and are therefore subject to the FAA. *See Serv. Corp. Int'l v. Lopez*, 162 S.W.3d 801, 807 (Tex. App.–Corpus Christi 2005, no pet.) (reaching the same conclusion on similar facts).

When a trial court erroneously denies a motion to arbitrate under the FAA, mandamus is the appropriate remedy. *In re Halliburton Co.*, 80 S.W.3d 566, 573 (Tex. 2002) (orig. proceeding); *see* 9 U.S.C.A. § 4 (2005) (providing, in part, that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement"); *Nabors Drilling USA, LP v. Carpenter*, 198 S.W.3d 240, 246 (Tex. App.–San Antonio 2006, orig. proceeding). Accordingly, we dismiss SCI's interlocutory appeal and consider the merits of its petition for writ of mandamus.

## IV. STANDARD OF REVIEW

To be entitled to mandamus relief, a petitioner must show that the trial court clearly abused its discretion and that the relator has no adequate remedy by appeal. *In re*

*Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding)); *see In re McAllen Med. Ctr., Inc.*, No. 05-0892, 51 Tex. Sup. Ct. J. 1302, 2008 Tex. LEXIS 759, at *6 (Tex. Aug. 29, 2008) (orig. proceeding). We may not substitute our judgment for that of the trial court with respect to the resolution of factual issues or matters within the trial court's discretion. *Walker*, 827 S.W.2d at 839-40. The relator must show that the trial court could reasonably have reached only one decision. *Id.* The reviewing court cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.* With respect to the trial court's decision on legal issues, our review is much less deferential. *Id.* at 840. A trial court has no discretion in determining what the law is or applying the law to the facts. *Id.* Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion. *Id*.

## V. VALIDITY AND SCOPE

A party seeking to compel arbitration by a writ of mandamus must (1) establish the existence of a valid agreement to arbitrate under the FAA, and (2) show that the claims in dispute are within the scope of the agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding). "Whether a valid arbitration agreement exists is a legal question subject to de novo review." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006). In determining the validity of agreements to arbitrate which are subject to the FAA, we generally apply state-law principles governing the formation of contracts. *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). If the trial court finds there

is a valid agreement to arbitrate, the burden shifts to the party opposing arbitration to prove his defenses. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

Once a valid agreement to arbitrate has been established, the court must then determine whether the arbitration agreement covers the nonmovants' claims. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) (orig. proceeding). To determine whether an existing arbitration agreement covers a party's claims, a court must "focus on the complaint's factual allegations rather than the legal causes of action asserted." *Id.* at 754. Federal policy embodied in the FAA favors agreements to arbitrate, and courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration. *Id.* at 753. If the arbitration agreement encompasses the claims and the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings. *Id*. at 753-54; *D.R. Horton, Inc. v. Brooks*, 207 S.W.3d 862, 866-67 (Tex. App.–Houston [14th Dist.] 2006, no pet.); *Feldman/Matz Interests, L.L.P. v. Settlement Capital Corp.*, 140 S.W.3d 879, 883 (Tex. App.–Houston [14th Dist.] 2004, no pet.).

## VI. NONSIGNATORIES

SCI contends that the claims asserted by all of the plaintiffs herein are factually intertwined with the claims asserted by Petra Lopez and thus all plaintiffs should be compelled to arbitration. SCI makes this argument in one paragraph:

> All claims that are factually intertwined with the claims asserted by Petra Lopez are arbitrable. *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 271 (Tex. 1992). Generally, if the facts alleged in a claim 'touch matters,' have a 'significant relationship' to, are 'inextricably enmeshed' with, or are 'factually intertwined' with the contract that is subject to the arbitration agreement, the claim will be arbitrable. *Id.*; *see In re Nestle USA-Bev. Div.,*

8

*Inc.*, 82 S.W.3d 767, 770 (Tex. App.–Corpus Christi 2002, orig. proc.); *Hou-Scape, Inc. v. Lloyed*, 945 S.W.2d 202, 205-06 (Tex. App.–Houston [1st Dist.] 1997, [orig. proceeding]) (citing cases). The plaintiffs themselves allege factually intertwined facts and unified claims. See Petition ¶¶9, et seq. As such, all claims are subject to arbitration.[3]

SCI contends, in the alternative, that the claims of the remaining plaintiffs should be stayed pending the conclusion of the arbitration regarding Lopez's claims. We note that whether an arbitration agreement is binding on a nonparty is a gateway matter that should be decided by the courts. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding).

SCI's argument is premised on a misunderstanding of the applicable law. The cases cited by SCI stand generally for the proposition that, under certain circumstances, factually intertwined causes of action filed by the same party are subject to arbitration. *See Anglin*, 842 S.W.2d at 271; *Hou-Scape, Inc.*, 945 S.W.2d at 205-06; *see also Nestle USA-Bev. Div.*, 82 S.W.3d at 776 (discussing when a claim falls within the scope of an arbitration agreement). The cases have nothing to do with the circumstances under which nonparties to an arbitration agreement can be compelled to arbitrate their claims against a party to an arbitration agreement. This issue is the subject of a well-developed body of law, none of which is cited by SCI in its briefing to the trial court or this Court.

The Texas Supreme Court has stated that "arbitration is a matter of consent, not coercion," and "arbitration is not required merely because two claims arise from the same transaction." *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 192 (Tex. 2007) (internal

---

[3] This quotation is taken from SCI's petition for writ of mandamus. SCI's argument and authority in its appellate brief is identical to this paragraph with the exception of an additional citation to *D. Wilson Construction Co. v. McAllen Independent School District*, 848 S.W.2d 226, 231 (Tex. App.–Corpus Christi 1992, writ dism'd w.o.j.); and the omission of the citation to *Nestle USA-Beverage Division, Inc.*, 82 S.W.3d 767, 770 (Tex. App.–Corpus Christi 2002, orig. proceeding).

9

quotations and citations omitted). Applying principles of contract and agency law, arbitration agreements may potentially bind nonsignatories under any of six theories: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third party beneficiary. *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739. None of these theories are present in or applicable to the instant case. Accordingly, we conclude that the claims of the Garza and Rogers families cannot be compelled to arbitration.

## VII. DEFENSES

We now turn our attention to Lopez's alleged defenses to arbitration. *See In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 367 (Tex. App.–Houston [14th Dist.] 2000, orig. proceeding); *City of Alamo v. Garcia*, 878 S.W.2d 664, 665 (Tex. App.–Corpus Christi 1994, no writ). Lopez alleges that she is not bound by the agreement because, inter alia, the contract is not valid, the lawsuit does not involve any claims related to the contract, the contract post-dates the conduct complained of in this litigation and it cannot be applied retroactively, and the contract is substantively unconscionable and illusory because it lacks mutuality.

When considering Lopez's defenses to arbitration, we conclude that the trial court did not abuse its discretion in denying SCI's motion to compel arbitration. Lopez contends that the agreement to arbitrate is illusory because it lacks mutuality. An arbitration agreement may be illusory if a party can unilaterally avoid the agreement to arbitrate. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006) (orig. proceeding); *D.R. Horton, Inc. v. Brooks (In re D.R. Horton)*, 207 S.W.3d 862, 867 (Tex. App.–Houston [14th

10

Dist.] 2006, orig. proceeding) ("An illusory promise is one that fails to bind the promisor because he retains the option of discontinuing performance without notice."); *see also Nabors Wells Servs. v. Herrera*, Nos. 13-08-00397-CV & 13-08-00451-CV, 2009 Tex. App. LEXIS 549, at **11-12 (Tex. App.–Corpus Christi Jan. 27, 2009, orig. proceeding).

In the instant case, the first page of the contract provides:

> NOTICE: BY SIGNING THIS AGREEMENT, PURCHASER IS AGREEING THAT ANY CLAIM PURCHASER MAY HAVE AGAINST THE SELLER SHALL BE RESOLVED BY ARBITRATION AND PURCHASER IS GIVING UP HIS/HER RIGHT TO A COURT OR JURY TRIAL AS WELL HAS HIS/HER RIGHT OF APPEAL.

The other side of the contract, which contains additional terms and conditions, further provides that:

> ARBITRATION: PURCHASER AGREES THAT ANY CLAIM HE/SHE MAY HAVE AGAINST SELLER (INCLUDING THE INTERPRETATION OF THIS ARBITRATION CLAUSE) SHALL BE SUBMITTED TO AND FINALLY RESOLVED BY MANDATORY AND BINDING ARBITRATION IN ACCORDANCE WITH THE STATUTES, RULES OR REGULATIONS GOVERNING ARBITRATIONS IN THE STATE WHERE THIS AGREEMENT HAS BEEN EXECUTED. . . . THIS AGREEMENT TO ARBITRATE ALSO APPLIES TO ANY CLAIM OR DISPUTE BETWEEN OR AMONG THE SELLER, YOU AS THE PURCHASER, AND ANY PERSON WHO CLAIMS TO BE A THIRD PARTY BENEFICIARY OF THIS AGREEMENT, ANY OF THE SELLER'S EMPLOYEES OR AGENTS, ANY OF THE SELLER'S PARENT, SUBSIDIARY, OR AFFILIATE CORPORATIONS, AND ANY OF THE EMPLOYEES OR AGENTS OF THOSE PARENT, SUBSIDIARY OR AFFILIATE CORPORATIONS.

SCI contends that the arbitration agreement is not illusory because the foregoing language imparts on it a mutual obligation to arbitrate disputes with Lopez. We do not see a "mutual" agreement to arbitrate in the foregoing language. Rather, the cited language merely seeks to expand the purchaser's obligations to arbitrate as against other entities related to the seller and purports to impose the duty to arbitrate on third party beneficiaries of the

11

contract.

Moreover, SCI's contention is belied by other contract provisions. Under general principles of contract construction, we must strive to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative. *See Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998). The contract states that "Purchaser agrees to pay all reasonable costs of collection as provided by state statute, including court costs, disbursements, and other lawful charges incurred in the collection of the Purchaser's indebtedness to Seller." The contract expressly reserves to SCI the right to take "any legal procedure necessary" to collect amounts due from Purchaser:

> It is expressly understood that acceptance of this Agreement shall not preclude the Seller from filing a claim against the estate of the deceased and such claim shall be an additional and cumulative remedy, the filing of which shall not release the Purchaser nor prevent the taking of any legal procedure necessary to effect the collection of amounts owed under this Agreement.

Thus, SCI has not agreed to arbitrate any claim or dispute with Lopez regarding payments due under the contract and has retained its right to resort to any legal procedure necessary in terms of collection efforts filed in an applicable court. Moreover, the contract further provides that:

> The Seller expressly reserves the right at any time it finds itself unable to fulfill this Agreement or perform any service or make any interment because of strikes, lockout, invasion, insurrection, riot, war, order of any military or civil authority, order of the court, or because of any other unforeseen contingency, or misrepresentation or fraud in the procuring of same, or because of any mistake or error in description, location, or availability of property or because the person for whom the Interment Rights, Merchandise and Services are purchased is not eligible for interment in the property herein described, to return to the Purchaser all moneys paid hereunder for the items affected by such and this Agreement shall as to such affected items become null and void.

Based on the foregoing, SCI can void the agreement at its sole discretion due to an

12

"unforeseen contingency" or "mistake."

We conclude that the alleged promise to arbitrate is illusory and the arbitration agreement is unenforceable. *See Palm Harbor Homes, Inc.*, 195 S.W.3d at 677. Accordingly, we need not address Lopez's other defenses, including the contention that the underlying lawsuit does not contain claims related to the arbitration agreement.

## VIII. CONCLUSION

The Court, having examined and fully considered SCI's interlocutory appeal and its petition for writ of mandamus, and all briefing therein, is of the opinion that SCI has not shown itself entitled to the relief sought. Accordingly, SCI's motion for temporary relief, previously ordered to be carried with the case, is DENIED. The appeal is DISMISSED and the petition for writ of mandamus is DENIED. *See* TEX. R. APP. P. 52.8(a). Given our disposition of these matters, the "Emergency Motion by Certain Appellees to Dismiss Involuntarily for Want of Jurisdiction" is DISMISSED as moot.


PER CURIAM

Memorandum Opinion delivered and
filed this 12th day of February, 2009.

13